## DUREN v. KEE.

1. In action for the recovery of real property, judgment records of former actions, to which the defendant was neither party nor privy, are inadmissible in evidence against him.

2. Questions of fact involved in the refusal of a motion for new trial cannot be reviewed by this court.

3. There was no error in charging the jury that one who enters into actual possession of land, claiming it under a deed, is in by color of title, which extends the possession to the boundaries, without regard to the quantity actually occupied.

4. When the heir is in of his ancestor's possession and makes no new entry, the possession of ancestor and heir may be united in making out the period necessary to quiet title.

5. The act of 1824, saving the rights of minors as to land where action had not been barred during the life-time of the ancestor, was intended only to apply to lands inherited by infants. It has no application to a case where an infant took a conveyance after the statute had commenced to run, and then, after his majority, conveyed to another party, the plaintiff in this action.

6. And in this matter, except in an enlargement of the time to sue, the Code of Procedure, section 107, makes no change.

Before Hudson, J., Lancaster, March, 1886.

The opinion states the case.

*Messrs. R. E. & R. B. Allison,* for appellant.

*Mr. Ernest Moore,* contra.

March 5, 1887. The opinion of the court was delivered by

Mr. Justice McGowan. This was an action brought August 17, 1879, to recover the possession of 400 acres of land in Lancaster County. The plaintiff offered the following chain of title: 1. Grant with plat to Bryce Miller, June 2, 1794, for 299 acres. 2. Deed by Bryce Miller to Jane Robinson, December 1, 1795, for 200 acres (Jane Robinson land). 3. Power of attorney by William Robinson, "son and only heir of Jane Robinson," to Wylie R. Duren, March 25, 1858 (recorded June 25, 1858), and deed of William Robinson, son and heir of Jane, his mother, by his attorney in fact, Wylie R. Duren, to Thomas R. Duren, September 30, 1858, recorded October 4, 1858, for 1,000 acres, more or less. 4. Deed by Thomas R. Duren to Matilda A. Duren, November 25, 1875, for 500 acres.

The defendant's abstract of title was as follows: 1. Deed from Abden Alexander, sheriff of Lancaster County, to Alexander Craig, July 4, 1799, recorded December 8th, 1817, reciting recovery of judgment in favor of James Houston against Bryce Miller, at January term, 1796, of the court for Lancaster County, execution and levy thereunder. This deed purports to convey to said Alexander Craig, among others, the following tract of land, sold as the property of Bryce Miller, to wit, "Two hundred acres on the waters of Bear creek, bounded by James Walker's land,"

&c.  2.  It is claimed that Abel Funderburk, sr., and his daughter, Hannah Dixon, began cultivating a small field on the land in dispute as early as 1856 or '7; that Funderburk continued to cultivate this small field until his death in 1867; that he moved on it in 1860; and the defendant, his daughter, claims to have gone into the house with her father in 1862, and thus claims it by possession.

Much testimony was offered on both sides.  In reference to the plaintiff's title, the principal questions were, whether she had shown that William Robinson was, as alleged, "the only son and heir of Jane Robinson," and whether she had satisfactorily located the 200 acres known as the "Robinson land."  Upon this latter point the records in the cases of *Massey* v. *Duren* and *Duren* v. *Sinclair*, offered in evidence by the plaintiff, were excluded. These questions were left to the jury.  But assuming that they were established to the satisfaction of the jury, the defendant contended that the plaintiff was still not entitled to recover at least a part of the land to which she had title by adverse possession for more than ten years.  She claimed that her ancestors, the Funderburks, came in under the Craig deed from the sheriff, and claimed to its whole extent as color of title.  No possession of any part of the Craig purchase was taken until 1856 or 1857 by Abel Funderburk and his daughter, then but a few acres were reduced to cultivation, enlarged at "the end of the war," or 1869, to 25 acres. Funderburk died in 1867, but previous to his death, in 1862, his daughter, the defendant, Permelia H. Kee, went into possession with him, remained there after his death, and now claims title to the whole land under the color of title afforded by the Craig deed, or, if not, at least to the extent of their actual *pedis possessio*. In order to meet this view, the plaintiff proved that Thomas R. Duren, one of those in the chain of title under whom she claims, was a minor down to 1875, when he conveyed to her.

The judge reports: "Taking either location, the defendant is in possession of a small part of the Robinson land, say about 25 acres.  Those under whom she claims by descent, took possession, actual *pedis possessio*, of a few acres prior to September 30, 1858, the day when the infant, Duren, became seized of the 'Robinson land.'  The statute of limitations, therefore, began to run in

favor of these actual occupants before the intervention of the said infant title, and hence was not arrested thereby. Now, if the Funderburks were in as mere adverse occupants, without color of title, their *pedis possessio* could not be enlarged as against this infant after he became seized. But if they were in under well defined color of title, the case would be different. I instructed the jury that one who went into actual possession of land under a deed or grant, claiming under it, was in by color of title. But whether the defendant could connect herself with the Craig deed; whether the Craig deed covered the Jane Robinson land in whole or in part; what was the real extent of the defendant's claim; when possession began; whether it had been open, notorious, and continuous for the statutory period—all these questions were left to the jury. They were told, also, that if this adverse possession began before the infant became seized, it would not thereby be interrupted; but if it began after the infant became seized, it would avail the defendant nothing. The verdict was for the defendant. From the evidence in the case, the argument and contention of counsel, and the charge, their real inquiry was confined to the question, whether the defendant could retain her present *pedis possessio* or not. Such really was the struggle and no more. The attention of the court and jury was directed to this issue, and I did not see fit to enlarge the inquiry. Hence I deemed it to be my duty to certify on the plat the real extent of the verdict, its meaning and scope. I rejected the records proposed to be introduced, because they were *res inter alios acta.* The defendant was not a party thereto."

There was a motion for a new trial, which the judge refused, saying: "I take occasion to repeat what I have certified on the plat, viz., that the verdict establishes the fact that the defendant is not a trespasser, and is, therefore, entitled to so much within the red area on the McIlwain plat as is now occupied by her, and no more." The plaintiff appeals to this court on numerous exceptions, which are in the "Brief," and need not be stated here. All the points made can be properly condensed into the following propositions: I. That the presiding judge committed error in excluding the records in the cases of *Massey* v. *Duren,* and *Duren* v. *Sinclair.* II. That there was error in refusing the motion for

a new trial, for the reason that the plaintiff was entitled to recover all the land except that which was in the actual possession of the defendant in 1858, when the title was conveyed to Thomas R. Duren, at that time an infant.    III. That there was error in holding that the Craig deed might operate as color of title.    IV. That it was error to charge that the defendant could acquire title by adverse possession for the statutory period, notwithstanding the infancy of one under whom plaintiff claimed by deed, when such adverse possession commenced prior to conveyance to the infant; and that to make out the statutory period, the possession of ancestor and heir could be joined.

As to the complaint of error on the part of the judge in excluding the records mentioned, it is only necessary to say that it did not appear that they had any connection with the case, or that the defendant was either a party or privy thereto.

In reference to the complaint of error in refusing a new trial. The Circuit Court alone had the right to determine that matter, so far, at least, as concerned the questions of fact upon which the jury had passed.    This court cannot review the judgment of the Circuit Judge as to the sufficiency or insufficiency of the evidence.

But it is alleged that the judge committed error of law in charging that one who enters into actual possession under a deed or grant, claiming under it, is in by color of title, which, in effect, extends the possession to its boundaries, without regard to the quantity actually occupied.    We cannot say that this was error. "To constitute adverse possession, it is only necessary that the land should be held as one's own.    The deed under which possession is acquired constitutes color of title, and defines the extent of the occupant's claim."    *Gary* v. *Bates*, 3 *Strob.*, 498.    It appears that there was some family connection between Craig and the Funderburks, and the latter claimed that Craig gave to them, or some of them, his original deed from the sheriff, and that they entered into the possession of the land in dispute under it.    The judge did not undertake to sustain the claim, but simply announced the law upon the subject, leaving it "to the jury to decide whether the defendant could connect herself with the Craig deed, and, if so, whether it covered the Jane Robinson land in whole or in part."    From the verdict it would seem that the jury really

did not find that the defendant entered under color of title. But we do not agree that it follows from this that the plaintiff was entitled to a new trial in order to have a verdict for lands outside of the parcel recovered by the defendant, for the jury may have found that she, the plaintiff, failed to locate her claim or to prove her chain of title, and especially that William was "the only son and heir of Jane Robinson." The title to the land outside the *pedis possessio*, recovered by the defendant, remains as it stood before the action.

Then, was there error in respect to the parcel actually in the occupancy of the defendant? The judge reports, "that the defendant, and those under whom she claimed by descent, took possession of a few acres prior to September 30, 1858, the day when Duren, the infant, became seized of the Jane Robinson land. The statute of limitations, therefore, began to run in favor of these actual occupants before the intervention of the said infant title, and hence was not arrested thereby," &c. We take it to be settled, that when there is no new entry, but the heir is in of his ancestor's possession, the possession of the heir is that of the ancestor, and may be united with it in making out the necessary period to give title. As Judge Butler expressed it in *Williams* v. *McAliley, Cheves*, 205: "It is inheriting not only the title, but the position by which a title is acquirable; a possession not taken by the option of the heir, but one that is cast on him by the operation of the law." Funderburk and one of his daughters were in actual possession of a few acres of the land in 1856 or 1857. The father died in 1867, leaving a daughter, the defendant, in possession, which she retained. It may be at least doubtful whether the father had not been in possession ten years when he died in 1867; but, adding the possession of the daughter, there had been actual continuous possession for more than twenty years, when the action was brought in August, 1879.

It is, however, insisted that there must be deducted the period from 1858 to 1875, for the reason that during that time Thomas R. Duren was a minor, and seized of the land; that during that period there was no right of action, and there could not be, in contemplation of law, any adverse possession; and that the plaintiff is entitled to the benefit of this theoretical disability, although

the minor himself never sued, but conveyed to the plaintiff, who brought the action. It seems to us that this would be a new application of the law affording protection to infants. In the first place, a trespass had been committed, a cause of action had accrued, and the statute of limitations had commenced to run against the Robinsons before they conveyed to Duren. It is certainly the general rule that when the statute of limitations has begun to run, no subsequent disability can stop it. *Faysoux* v. *Prather*, 1 *Nott & McC.*, 296; *Shubrick* v. *Adams*, 20 *S. C.*, 52.

But to this it is replied, that an exception was made by statute, saving the rights of infant owners of land against the bar of the statute. It is true, in giving construction to the old statute of limitations (1712), there arose a question upon which the courts and judges did not agree, viz., whether the infant heir was barred when the statute had commenced to run against the ancestor in his life-time, but the time allowed had not run out before the descent was cast upon the infant heir. See *Hill* v. *Connelly*, 4 *Rich.*, 619; *Rose* v. *Daniel*, 3 *Brev.*, 438; *Faysoux* v. *Prather*, 1 *Nott & McC.*, 296; *Cook* v. *Wood*, 1 *McCord*, 139; and *Gibson* v. *Taylor*, 3 *McCord*, 451. In order, as we suppose, to settle this much vexed question, the act of 1824 was passed, which enacted "that the statute of limitations should not hereafter be construed to defeat the rights of minors, when the statute has not barred the right in the life-time of the ancestor, before the accrual of the right of the minor." Whether we consider the time and circumstances under which this act was passed, or its express terms, we cannot doubt that it was intended only to apply to lands inherited by infants, when the statute had commenced to run, but had not barred the right "in the life-time of the ancestor."

We have not been referred to any authority, nor can we find any, which authorized the application of this provision to a case like the present, where one of the intermediate owners, who, in the ordinary course of business, had received and conveyed title, happened to be under age for a period of his ownership. In the case of *Hill and wife* v. *Connelly*, *supra*, it was decided, after great argument in the Court of Errors, "that an infant is entitled under the act of 1824, as all other persons are, to ten years from

the accrual of his right of action within which to prosecute his claim to land; but he is not entitled to the ten years under the act of 1824 within which to sue after arriving at age, but only to five years under the act of 1788." In this case Judge Evans, in delivering the judgment of the old Court of Errors, said: "That a right of action accrued to an infant from the first entry is clear, because, by a properly constituted guardian or *prochein ami*, he can sue to recover lands, and if he fail or let fall his action, he would probably be barred as other plaintiffs are." As an infant has a right of action, and may sue by guardian, it would seem that he is not under disability in the usual sense of the word, and might possibly be barred in ten years but for the provision which allows him, on account of his infancy, so many years after he attains majority within which to bring his action. Here the action was not brought by the infant claiming the time allowed after maturity, but by his alienee, to whom he had simply conveyed the land after attaining his majority.

We are unable to see that the old law upon this subject has been materially changed by the code of procedure, except, perhaps, by enlarging the time within which an infant may sue, after he attains his majority. Section 107 declares that, "The right of a person to the possession of any real property shall not be impaired or affected by a descent being cast in consequence of the death of a person in possession of such property." We do not understand that this provision conflicts with the doctrine before referred to, that the possession of the ancestor and heir, which are really the same, may be united in making out title under the statute of limitations; but that "the right" shall remain against the heir precisely as it existed against the ancestor before his death. At common law the possession of the heir was placed higher than that of the ancestor, who, being a mere trespasser, could be evicted by mere entry; but when the possession of the trespasser was transmitted to the heir, the owner was driven to his action of ejectment, for the law presumed that the possession which was transmitted from ancestor to heir was a rightful possession until the contrary was shown, and, therefore, the mere entry of him who had the right would not evict the heir. See *Williams* v. *McAliley, supra.* As we understand it, this provision of the

code does no more than simply remove that presumption and leave the right against the heir as it existed against the ancestor before his death. See *Congdon* v. *Morgan*, 14 *S. C.*, 587.

Section 108 of the Code fixes several disabilities as to recovery of land, and declares that the person entitled to either, among which is being "within the age of twenty-one years at the time such title shall first descend or accrue," shall have ten years after such disability ceases in which to bring his action. This manifestly has no bearing on the case.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.