## BURNETT v. CRAWFORD.

1. EVIDENCE.—It is improper to ask a witness if he did not know that his grand-mother owned the land and claimed it as her own, because it is leading, and asks for an opinion.

2. IBID.—PRACTICE—WRITING.—Where an agreement is in writing, and is ruled out by the Court as irrelevant, the party moving its exclusion cannot afterwards object to the proof of the facts covered by it by otherwise competent testimony.

3. CHARGE—COTENANTS—EJECTMENT.—It is proper to refuse a request which assumes that one in possession of land could not have held it adversely to his cotenant, so as to bar her previous to an alleged settlement.

4. PRESUMPTION—OUSTER—COTENANTS.—The instruction that ouster of a cotenant may be presumed from lapse of twenty years, *held* applicable to the facts of this case.

5. CHARGE—EJECTMENT.—In actions for possession of land, Judge may instruct the jury that plaintiff must recover, if at all, upon strength of his own title, even where both claim from common source.

6. IBID.—CONSTITUTION.—It is contrary to sec. 26, art. V., of Con. 1895, for a Judge to state in the interrogative form to the jury facts sworn to by witnesses. Following *Norris* v. *Clinkscales*, 47 S. C., 488, and *State* v. *Stello*, 49 S. C., 488.

Before BENET, J., Abbeville, October, 1895. Reversed.

Action for partition by J. P. Burnett against the devisees of John Gaulden. Judgment for defendants. Plaintiff appeals.

*Messrs. Graydon & Graydon*, for appellant, cite: *Presumptions:* 48 S. C., 28. *Charge:* 47 S. C., 488.

*Messrs. DeBruhl & Lyon*, contra, cite: *Proof of title by rumor or opinion:* 48 S. C., 472. *Parol partition:* 26 S. C., 251; 32 S. C., 160. *Ouster of cotenant by presumption:* 2 Hill Ch., 511; 1 Hill Ch., 378; Cheves Eq., 60; 48 S. C., 282; 48 S. C., 472; 48 S. C., 28; 40 S. C., 168.

July 22, 1897. The opinion of the Court was delivered by MR. JUSTICE JONES. This is an action for partition of

a tract of land, commenced by Sarah Burnett March 28th, 1891. After her death in February, 1895, her son, the present plaintiff, was substituted. The answer of defendants raised an issue of title, and the cause was heard before Judge Benet and a jury. The jury found for the defendant on the issue of title, and thereupon Judge Benet made decree affirming and approving the verdict and dismissing the complaint.

The evidence before the jury tended to show that James Gaulden died intestate in 1827, seized and possessed of the land in dispute, leaving as his heirs at law his widow, Frances Gaulden, and five children, John, who was the father of defendants; Sarah, who was the mother of plaintiff; William, who died unmarried and intestate previous to 1841; Andrew J., who died during the war, unmarried and intestate; and Charles B., who died about 1854, unmarried and intestate. In 1841, Andrew J. conveyed all his interest in said tract to John and Charles B. After the death of Charles B., Andrew J. conveyed, in 1856, to John all his interest in the real estate of Charles B. In the same year, Sarah Burnett conveyed to John Gaulden all her interest in the real estate of Charles B. Gaulden. Sarah lived on the land in dispute until her marriage in 1849, when she moved off. In 1859 she took possession of 1½ acres of the original tract, which contained 223 acres, and in July, 1880, she took possession of 5½ acres additional, adjoining the 1½ acre lot, and occupied the seven acres until her death, in 1895. In her testimony, taken *de bene esse* before her death, she said that her mother, Frances Gaulden, gave her the 1½ acre lot, and that her brother, John, gave her the 5½ acre tract, "in that compromise, as you call it." Frances Gaulden, the widow, continued to live on the land in question until she died, in August, 1879, intestate, leaving said John Gaulden and Sarah Burnett as her only heirs at law. John Gaulden lived on the disputed land, taking care of his mother, working it and controlling it as his own, until his death, in 1889. He died testate, devising the land in dis-

pute to his children, the defendants. Afterwards, Sarah Burnett brought this action for partition of the land, claiming an undivided half interest therein, as tenant in common.

The answer, after denying the allegations of the complaint, set up by way of defense, (1) that John Gaulden died seized and possessed in fee of the land in dispute, and by his will devised the same to defendants; (2) the purchase by John Gaulden of all the interest of Sarah Burnett in the estate of Frances Burnett, shortly after the death of Frances, in settlement for which John Gaulden gave to Sarah Burnett a small tract of land adjoining the land in dispute; (3) adverse possession by John Gaulden and the defendants for more than ten years before the commencement of the action and since the said settlement.

The foregoing statement of some of the facts which the evidence tended to show and of the issues, will be sufficient for a clear understanding of the points raised here.

1. The first ground of appeal cannot be sustained. It was not error to refuse to allow the plaintiff's counsel to ask the plaintiff, "if he did not know that his grand-mother owned that land and claimed it as her own?" The witness had just previously testified (on cross-examination) that he knew it was his grand-mother's land, and when asked how he knew it, said that he simply knew it from his grand-mother's statement, and that he did not know it of his own knowledge. Plaintiff's counsel desired to ask the above question in reply. It was manifestly incompetent. Not to mention the leading form of the question and the previous admission that his knowledge was derived from his grand-mother's statement, the answer would involve the witness' opinion as to the ownership of land. If plaintiff was seeking to bring out declarations accompanying and explanatory of acts of ownership, his question was not properly framed to that end.

2. It is presented as a second ground of appeal that there was error "in allowing the witness, C. W. Gaulden, to testify as to an alleged settlement between Mrs. Sarah Burnett and

John Gaulden, when it appeared from the testimony of the witness that the terms of the settlement had been reduced to writing and signed by the parties, and after the paper had been ruled out by his Honor." The instrument in writing referred to is as follows: "Ninety-Six, Abbeville County, S. C., July 3d, 1880. I hereby relinquish all claims to the estate of Mrs. Frances Gaulden, deceased, for the consideration of the parcel of land herein described. The land is bounded by the home lot of Mrs. Sarah Burnett on the west; on the north by the public road, down to the present corner, marked by a stone, turning from the corner south to a pine tree marked, continuing to Jeff Floyd's land line; on the west by John R. Tolbert's land and others. Done this 3d day of July, 1880. (Signed) Sarah Burnett. Witness: C. W. Gaulden, J. P. Burnett." This paper was ruled out as irrelevant, on the motion of plaintiff's counsel. The "Case" shows the following as containing the matter to which the second exception relates: Q. Do you know or not whether Mrs. Sarah Burnett and your father had a settlement between them of your grand-mother's estate? Mr. Graydon objects. Objection overruled for the present. By Mr. Graydon: Was that settlement in writing? A. Yes, sir, it was. By Mr. DeBruhl: Where is that writing? A. You have it. Q. The paper we proved by you a few minutes ago? A. Yes, sir. Mr. DeBruhl offers the paper in evidence. Mr. Graydon objects. Objection sustained. Q. Were you present or not, or was there a division of your grand-mother's estate? A. Yes, sir. Mr. Graydon objects. Q. Was there a division of your grand-mother's estate between your father and your aunt, Mrs. Burnett, in which division your aunt took 5½ acres of land as her full share and your father the balance? Mr. Graydon objects. Objection sustained. Q. Do you know the land upon which Mrs. Sarah Burnett was living at the time of her death? Yes, sir. How much did she have in land in the whole place? 5½ and 1½ acres. Seven in all? Yes, sir. How long had she that 5½ acres in her possession? Since 3d July, 1880. Where did she get that 5½

acres? From my father. The Court: That is to say, John Gaulden? Mr. DeBruhl: Yes, sir. For what did she get that 5½ acres, what did it represent? Mr. Graydon objects. The Court: He can state of his own knowledge, if he can state that she got this 5½ acres of land from John Gaulden, and what John Gaulden gave it to her for, if you can state that of your own knowledge. Was there any other writing than the one you have identified? No, sir. The Court: We are therefore free from any paper now, for the only paper on the subject has been ruled out by me, and therefore we will not consider that. You may now ask your questions, and I will see if they are competent. No testimony can be allowed as to the contents of that paper, nothing tending to let any light as to what they are trying to do in that paper, but he may give such testimony as would be competent if there had been no effort to make a written settlement. Mr. Graydon excepts. Q. You have just said that your aunt got 5½ acres of land from your father, now I ask you if you know for what she got that 5½ acres of land? Yes, sir. The Court: How do you know? Witness: I heard Mrs. Burnett say so. Mr. Graydon excepts. Who did she talk to when you heard her say that? To John Gaulden; I heard her say that she took that in full interest of her mother's estate. By the Court: What did she say? She said she would take the 5½ acres as her interest in her mother's part of the land, Frances Gaulden's land. Who took the remainder of the land? John Gaulden, &c. While it is true, as a general rule, that when parties have put their agreement in writing, it is not competent to introduce parol evidence to alter, vary or contradict such writing, in this case the writing was ruled out as irrelevant on appellant's motion; therefore, appellant is not in a position to say that the parol evidence is inadmissible, because it relates to a settlement contained in such writing, and that such writing is the highest evidence and conclusive. If he wishes to stand on the conclusiveness of a paper writing as applicable to this contention, he should not himself cause the writing to be excluded. The admis-

sibility of the testimony objected to must, therefore, be tested by its own competency and relevancy to the issues in the case, and not by its supposed relation to a paper writing declared irrelevant. We think the testimony was competent. It was relevant as tending to show the character of the possession of the parties with respect to the land in controversy.

3. The third and fourth exceptions may be considered together. In the third exception error is assigned for the following charge to the jury: "If you come to the conclusion that John Gaulden and his heirs, successively from 1880, held this land in adverse possession, open to the world, for ten years prior to the commencement of this action, then their title would be good. If you come to the conclusion that John Gaulden and his heirs, successively, for ten years after 1880, before the commencement of this action, when Sarah Burnett is said to have accepted this five acres of land, then that would erect such title as the law says must not be disturbed." The fourth exception assigned error for refusing to charge plaintiff's request to charge the jury as follows: "That unless John Gaulden himself held the land for ten years adversely to all the world after the alleged settlement, then he did not acquire any title to said land, and his heirs took nothing by his will, so far as the interest of Mrs. Burnett was concerned." Theoretically, the charge of the Circuit Judge was correct, for it has been settled in this State that the possession of the heir can be tacked to that of his ancestor for the purpose of showing adverse possession for the statutory period. This is upon the theory that there is no new entry or trespass, but that the possession of the ancestor is cast by operation of law upon the heir, hence there is no break in the continuity of possession. *Williams* v. *McAliley*, Cheves, 204; *Duren* v. *Kee*, 26 S. C., 224. But it is also well settled that, where possession of land is transmitted by the act of the disseisor before the expiration of the statutory period necessary to bar the real owner, the continuity of possession is broken, and the grantee or successor of the

disseisor can not unite his possession with that of the disseisor in order to show adverse possession for the requisite period. *Mazyck* v. *Wight*, 2 Brev., 151; *King* v. *Smith*, Rice, 10; *Beadle* v. *Hunter & Garrett*, 3 Strob., 331; *Pegues* v. *Warley*, 14 S. C., 189; *Ellen* v. *Ellen*, 16 S. C., 132, and other cases that might be cited down to the case of *Garrett* v. *Weinberg*, 48 S. C., 28. The difficulty in this case is to determine which of the above principles applies to the facts of this case. The defendants, in their answer, and in their testimony offered, relied on two defenses: (1) that John Gaulden was sole owner of the whole tract, and died seized and possessed thereof in 1889, and, by his will, dated September 22d, 1884, devised the same to the defendants; (2) that defendants and their father, John Gaulden, have been in possession of said land as sole owners, adversely to the plaintiff, for more than ten years previous to the commencement of this action (March 28th, 1891), and since the alleged settlement between John Gaulden and Sarah Burnett (3d July, 1880). The death of John Gaulden took place within ten years after the date of the alleged settlement, hence the necessity under the latter defense to unite the possession of the heir to that of the ancestor. A devisee under a will does not take possession of the devise as heir, but rather as the grantee or purchaser of the testator; hence, under the principle of Garrett *v.* Weinberg, and other cases above cited, the possession of the devisee can not be united with that of the testator to make out adverse possession for the requisite period. But while this is true, there was no error in refusing appellant's request to charge, because the charge as requested assumed that John Gaulden could not have held the land adversely so as to bar plaintiff *previous* to the alleged settlement. Under a properly framed request, appellant would have been entitled to have the jury instructed as to the right of a devisee claiming under a will to unite his possession with that of his testator, so as to make out the statutory period of adverse possession.

4. The fifth exception has been practically considered and overruled in the consideration of the second exception.

5. The sixth exception, alleging error in charging the jury that ouster could be presumed from the lapse of twenty years, because such charge was inapplicable to the facts of the case, is overruled. The Judge, in his charge, explained the doctrine of ouster much more fully than the exception shows, and we think his charge in this regard was applicable to the issue, whether John Gaulden held adverse and exclusive possession of the land in dispute for twenty years against all who might claim as tenants in common.

6. In an action involving title to land, it is not error to charge the jury that the plaintiff must recover, if at all, on the strength of his own title, even though there is evidence that both parties claim from a common source.

7. The eighth exception is as follows: "Because his Honor erred in charging the jury as follows: 'Does C. W. Gaulden testify that his father never paid any rent on the land, and that he had it in exclusive possession? Does Dr. Blake testify that John Gaulden used the land as his own, worked it, fenced it, ditched it, cleaned it, built barns and stables, and the other tenants out of possession allowed him to go on doing that for twenty years and upwards? They cannot now come into Court and ask that he be disturbed.'" This charge is a manifest violation of article V., section 26, of the Constitution, forbidding Judges from charging juries "in respect to matters of fact." *Norris* v. *Clinkscales*, 47 S. C., 488. See, also, the recent case of *State* v. *H. Stello*, 49 S. C., 488, where such statement of facts in interrogative form is condemned.

The ninth exception need not be considered, in view of what has been already said.

The judgment of the Circuit Court is reversed, and the case is remanded for a new trial before a jury on the issue raised as to title.