Mr. Justice Gary concurring in the foregoing views, and the Court being equally divided on this question, the judgment of the Circuit Court stands affirmed.

---

## KILGORE v. KIRKLAND.

1. Real Property—Title—Common Source.—When parties to suit for possession of land claim from common source, plaintiff need go no further in his chain of title than the common source.

2. Ibid.—Adverse Possession.—Possession of ancestor and heir may be tacked to make up statutory period of adverse possession.

3. Will—Notice.—The Record of the probate of a will in probate court is only notice to those in privity therewith.

Before Izlar, special J., Kershaw, December, 1902. Reversed.

Action by Jesse Kilgore *et al.* against Frank P. Kirkland *et al.* From Circuit decree and judgment, defendants appeal.

*Messrs. J. T. Hay* and *Thos. J. Kirkland,* for appellants, cite: *As to refusal of nonsuit and new trial:* 14 Ency., 2 ed., 1042; Sedg. & Wait. T. Title to Land, sec. 729; 64 S. C., 485; 14 S. C., 189; 16 S. C., 132; 50 S. C., 167; 1 Ency., 2 ed., 843. *As to notice of recorded will:* 20 Ency., 1 ed., 800; 24 Ency., 2 ed., 149, 150, 146; 20 S. C., 23; 2 Pom. Eq. Jur., 100; 2 Pom. Eq. Jur., 223. *Grantor may be estopped, and grantee not:* 23 Ency., 2 ed., 478. *Expired possession gives no notice:* 16 Ency., 1 ed., 801; 23 Ency., 2 ed., 506.

*Mr. W. P. Trantham,* contra, cites: *As to when statute begins to run in favor of administrator:* 16 S. C., 184, 228; 42 S. C., 63; 36 S. C., 322. *As to defense of purchaser for value:* 23 Ency., 482. *As to declarations of party in posses-*

*sion:* 1 Green., 109; 3 McC., 261; 4 McC., 267; 16 S. C., 142. *Decrees of probate court are conclusive:* Big. on Est., 159; 1 Story Eq., 440; 23 Ency., 132; 26 S. C., 237; 3 Strob. Eq., 42; 4 Rich. Eq., 101. *As to facts inciting inquiry:* 23 Ency., 480; 4 Rich. Eq., 105; 32 S. C., 480; 28 S. C., 58; 14 S. C., 90; 7 Pet., 271; 17 S. C., 558.

April 29, 1904.  The opinion of the Court was delivered by

MR. JUSTICE GARY.

### Statement of Facts.

The facts out of which the issues in this case arise are so complicated that we have deemed it advisable to set out the complaint, which is as follows:

"The plaintiffs, complaining of the defendants, allege:

"I. That James L. Kilgore, late of the county, then district, of Kershaw, departed this life on the 15th day of January, 1850, leaving in full force and effect his last will and testament, bearing date October 26th, 1849, and which was duly admitted to probate in the then court of ordinary for said district, now county, of Kershaw, on the 30th day of January, 1850, and recorded in will book; and that on the 15th day of February, 1850, letters of administration, with said will annexed, were granted by said court of ordinary to Jesse Kilgore, the father of the deceased, who at once qualified and entered upon the discharge of the duties of such administrator with the will annexed.

"II. That at the time of his death, the said James L. Kilgore owned, besides a large personal estate, a tract of land situated in said county, then district, of Kershaw, and State of South Carolina, known as the R. H. Williams place, containing six hundred (600) acres, more or less, lying on both sides of the Beaver Creek or Camden road, and bounded by lands then owned by Mrs. Sarah Ciples, John Kelley, John McDowell, Richard Owens, and by White Oak Creek, on the north and northwest, separating said tract from lands of Jesse Kilgore.

"III. That said tract is the same that was conveyed to said Jesse Kilgore by Hayman Levy, by deed dated November 27th, 1843, and recorded in the office of register of mesne conveyance for said district, now county, of Kershaw; that said Jesse Kilgore gave or conveyed said tract of land in fee simple to his son, the said James L. Kilgore, and placed him in possession thereof several years before the death of the latter; and that the said James L. Kilgore was and had been occupying, planting, and living upon said tract of land at the time his said will was executed, and at the time of his death as aforesaid.

"IV. That the following is a copy of the various clauses of the said last will and testament of said James L. Kilgore * * * '5th. I will and devise to my loving wife, Mary Adeline, all my lands lying south of the Camden road for and during her lifetime. 6th. I will and devise to my children equally, share and share alike all my land on the north side of said road, and the remainder on the south side of said road to them and the lawful issue of their bodies forever. In case either should die without said issue, the survivor to have it as aforesaid. The land on the north side of the said road to be rented annually until the youngest becomes of age, when the ordinary shall appoint three men to divide it as aforesaid * * *'

"V. That besides his widow, the said Mary Adeline, the said James L. Kilgore left him surviving his children, Alethea Lois, Mary Frances and Jesse James, the last named who is one of the plaintiffs herein, having been born on the 24th day of July, 1849, and that the said Mary Adeline continued to occupy, use, plant and control the land so devised to her as aforesaid, until the year 1858, when she removed to the State of Mississippi, where she resided until her death, on the 12th day of April, 1891.

"VI. That at the time of her departure from South Carolina, the said Mary Adeline left the said Jesse Kilgore in possession of said premises as purchaser of her life estate therein.

"VII. That the said Alethea Lois, who removed with her mother to Mississippi, in 1858, intermarried with one William McKain in 1863, and departed this life in the State of Mississippi, one year after her husband, on August 17th, 1868, leaving her surviving her only child, James K. McKain, one of the plaintiffs in this action, who was born on the 16th August, 1864; and that said Mary Frances Kilgore, who also removed with her to Mississippi in 1858, intermarried with one Hardy Hammond, now deceased, in 1867, and departed this life on the 15th day of October, 1875, leaving her only child, Lyna Hammond, one of the plaintiffs to this action, who was born on the 23d October, 1868.

"VII. That said lands on the south side of said road consists of some five hundred (500) acres, more or less, and are at the present time bounded * * * being the same devised in the 5th and 6th clauses of said last will and testament. * * *

"IX. That the plaintiffs are informed and believe that said Frank P. Kirkland, Adam Kirkland, Polly Duren and Caroline Thompson are in possession of said lands on the south side of said road, claiming the same as heirs at law of Jerry Kirkland, who, as the plaintiffs are informed and believe, claimed to hold said premises under and by virtue of a deed or deeds of conveyance thereof to him, executed by Jesse Kilgore, by his attorneys, Wm. M. Shannon and J. Ross Dye, of date January 15th, 1873, and recorded in the office of register of mesne conveyance of said county of Kershaw.

"X. That Jackson Duren is the husband of said Polly Duren, and the said Alfred Thompson is the husband of said Caroline Thompson, who was the widow of said Jerry Kirkland.

"XI. That as remaindermen, the plaintiffs are the owners in fee as cotenants of said premises, and as such are entitled to the immediate possession thereof.

"XII. That said real estate is reasonably worth the sum of four thousand ($4,000) dollars, and four hundred ($400).

6—69.

dollars per annum is a fair rent therefor, during its occupation by said defendants since January 1st, 1896.

"XIII. That the plaintiffs are informed and believe that the defendants, Richard Jones, William Thompson, Lou Thompson and William Cauthen, are occupying portions of said premises as tenants of others of the defendants.

"Wherefore, the plaintiffs pray judgment against the defendants: 1. For the possession of the lands heretofore described. 2. For the sum of four hundred ($400) dollars per annum, for the rent, use and occupation thereof since January 1st, 1896. 3. For such other and further relief as may be just and meet, and for the costs of this action."

The defendants, in their answer to the complaint, in effect, denied the title of the plaintiffs or their testator to the lands in dispute, and set up as a defense that they are heirs at law of Jerry Kirkland, who, they allege, purchased the land in good faith for valuable consideration from Jesse Kilgore, without notice of plaintiffs' alleged rights; they also pleaded the statute of limitations, and presumption of a grant from more than twenty years continuous, adverse possession by themselves and their ancestor.

The jury rendered a verdict in favor of the plaintiffs for the land in dispute; whereupon his Honor, the presiding Judge, made the following decree: "The above entitled cause came on to be heard before me and a jury on the second day of December, 1902. Before the trial, it was announced that the equitable defenses, to wit: Innocent purchaser, without notice, set up in the answer of the defendants, would be heard when the case was called for trial on the equity side of the Court. This arrangement was assented to by all parties. The trial was then entered upon, and at the close of the testimony on the part of the plaintiffs, a motion for a nonsuit was made by the defendants. After argument, I overruled this motion, and allowed the case to go to the jury. At the end of the testimony offered in the case, and after full argument both on the law and the testimony, I charged the jury fully as to the law applicable to the case, as I understood it, leav-

ing all the questions of fact to them, whose province it was
under the law, and then submitted the case to them.  The
jury, after several hours, returned a verdict in favor of the
plaintiffs for the lands in dispute.  No damages were as-
sessed.

"Notice of a motion for a new trial was then given by the
defendants on the minutes of the Court.  This notice was
then heard, and after argument, concurring with the jury in
the verdict rendered as I did, I refused the same.

"Afterwards, the case was called on the chancery side of
the Court to hear the equitable defense raised by the answer
of the defendants.  No additional or further testimony was
offered by either of the parties to said cause, the hearing
being upon the testimony submitted at the trial on the law
side of the Court.  After argument on the equitable defense
set up in the answer, namely, *bona fide* purchaser for valuable
consideration, without notice, I held that in the view which I
entertained, when all the facts and circumstances in the cause
were considered, the plea of *bona fide* purchaser for value,
without notice, could not avail the defendants, as I agree
fully with the verdict of the jury, and the facts necessarily
found by them from the evidence, I must decree in accord-
ance with said verdict.  In the view that I take of the
evidence, when all the facts and circumstances are carefully
considered, not only is the verdict warranted, but it is and can
be sustained.

"It is, therefore, ordered, adjudged and decreed, that the
defense of *bona fide* purchaser for value, without notice, be,
and the same is hereby, overruled and disallowed.  That,
concurring in the findings of the jury, said verdict stand as
the decree of this Court, and that judgment thereon be en-
tered for the plaintiffs accordingly."

The defendants appealed from the judgment of the Circuit
Court.

### Conclusions of Law.

Under the views herein announced, it will not be necessary
to consider the numerous exceptions in detail.

The first question for consideration is whether his Honor, the presiding Judge, erred in refusing the motion for a nonsuit. The exceptions raising this question are as follows:

"I. Because the plaintiffs proved claim from a common source, entirely failed to connect themselves by deed or otherwise with such common source, but showed instead a better title in defendants from said common source.

"II. Because the plaintiffs failed entirely to show such length or character of possession in themselves, or those under whom they claimed, as would amount to a legal title, or to show that the state had parted with its title."

It is conceded that the plaintiffs and the defendants claim from a common source of title. In *Smythe* v. *Tolbert*, 22 S. C., 133, the Court says: "There is no doubt that, as a general rule, the plaintiff, in an action to recover possession of real estate, on the ground of title, must show a complete and perfect title in himself, going back to a grant either actual or presumed. To this rule, however, there are several exceptions, one of which is that where both parties claim from a common source, the plaintiff need go no further back than this source; and having done so, the question then is, which of the two has the superior title * * * Whether, then, the general rule or the exceptions is to govern, in any special case, must depend upon the fact whether or not the parties claim through a common source. If they do not, then the plaintiff must recover upon the strength of his own title, and not upon the weakness of that of his adversary, and must trace back to a grant; if they do, then the plaintiff may stop, in the first instance, at the title of the common grantor; and whether they thus claim or not, is a question of fact (unless admitted in the pleadings), for the jury upon the evidence."

There is another reason why the nonsuit was properly refused. While it is true that a grantee of land holding possession under a written title cannot tack his possession to that of his grantor so as to make out the statutory

period of adverse possession, *Garrett* v. *Weinberg,* 48 S. C., 28, 26 S. E., 3, and while it is also true that the possession of a devisee cannot be united with that of the testator to make out adverse possession for the statutory period, *Burnett* v. *Crawford,* 50 S. C., 161, 27 S. E., 645, nevertheless, when the heir is in, of his ancestor's possession, and makes no new entry, the possession of ancestor and heir may be united in making out the period necessary to quiet title. *Duren* v. *Kee,* 26 S. C., 219, 2 S. E., 4. In this case there was testimony to the effect that James L. Kilgore held adverse possession of the land four or five years continuously before his death in the year 1850, and that his heirs continued in such possession until the year 1858. This, therefore, presented the question for the determination of the jury, whether such heirs acquired a title by adverse possession.

There was, also, other testimony which rendered it necessary to submit the question of title to the jury. Under these circumstances, the motion for a nonsuit was properly refused.

We will next consider whether the presiding Judge erred in finding that the defendants failed to sustain their defense that Jerry Kirkland, their ancestor, was a purchaser for valuable consideration, without notice. When the case was heard on the equity side of the Court, neither the plaintiffs nor the defendants offered any additional testimony. The conclusion of his Honor, the presiding Judge, was founded upon the testimony before the jury, and the principles of law stated in his charge. In charging the jury, he said: "In an action of this kind, I charge you, if the will was duly admitted to probate, and was recorded in the proper office, it was notice to the world. The record of the Court, the ordinary or the probate court, embraces notice of this sort. If there was a will of James L. Kilgore in the court of the ordinary or probate court of this county, and these lands in dispute are the same lands, and passed under the will, then the persons dealing therewith, dealt with notice

of the will, and that the lands were devised to Adeline, the widow of James L. Kilgore, that would be sufficient to put any one to inquiring. It would be enough to put them on inquiry which would lead them to discover or to look into the matter."

The appellants contend that this ruling was erroneous. There are numerous cases in this State which decide that an act placed upon record in a public office, open for the inspection and information of parties interested, is constructive notice to them. *Payne* v. *Harris,* 3 Strob. Eq., 39; *Long* v. *Cason,* 4 Rich. Eq., 60; *Pettus* v. *Clawson,* 4 Rich. Eq., 92; *Fricks* v. *Lewis,* 26 S. C., 237, 1 S. E., 884; *Ariail* v. *Ariail,* 29 S. C., 84, 7 S. E., 35; *Boyd* v. *Munro,* 32 S. C., 249, 10 S. E., 963; *Robertson* v. *Blair & Co.,* 56 S. C., 96, 34 S. E., 11. But this has reference to those *in privity* with the acts or proceedings in the public office, and not to mere *strangers,* as will be seen by reference to the foregoing cases, to which may be added *Duren* v. *Kee,* 26 S. C., 223, 2 S. E., 4. Jesse Kilgore was not *in privity* with the proceedings in the court of ordinary touching the probate of the will, in so far as concerned the lands therein devised. If Jesse Kilgore had held those lands as trustee, and had sold them in violation of his trust, the purchaser could not have interposed the defense that he bought the lands for valuable consideration, without notice, for the law would have implied notice to him from the record in the public office of the instrument creating the trust. *Ellis* v. *Woods,* 9 Rich. Eq., 19. But such were not the facts in this case. Under the will, Jesse Kilgore had nothing to do with the land.

While this Court undoubtedly has the power to review the facts arising out of the equitable issue, it likewise has the power to grant a new trial In this case the Court deems it best that there should be a new trial of the equitable issue. We are satisfied that the foregoing erroneous instruction was likewise prejudicial to the right of the appellants growing out of the legal issues, and, therefore, there should be a new trial as to them also.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial, both as to the legal and equitable issues.