12660

CLARKE *ET AL.* v. JOHNSON *ET AL.*

(148 S. E., 190)

352

*Mr. D. Carl Cook,* for appellants,

*Messrs. Dargan & Paulling,* and *Melvin Hyman,* for respondents,

May 13, 1929.

The opinion of the Court was delivered by Mr. Justice Cothran.

This is an action commenced in April, 1926, for the partition of a certain described tract of land, in Darlington County, containing 594½ acres, claimed to be intestate property of one Giles Johnson. The controversy is between certain heirs at law of Giles Johnson and grantees of certain heirs, on the one side, and Joe W. Johnson, a grantee of another of the heirs, Melissa Hicks, a daughter of Giles Johnson, on the other.

The complaint is in the usual form. The answer of the defendant Joe W. Johnson contains a denial of the title of the complaining heirs at law to or interest in the tract; pleads the statute of limitations, adverse possession of 10 years, and adverse possession of 40 years. The case was referred to the Master to take the testimony and report it to the Court.

The matter came on to be heard by his Honor, Judge Dennis, who filed a decree, dated April 6, 1928, adjudging that the defendant Joe W. Johnson was the sole owner in fee of the land and dismissing the complaint. From this decree the parties other than Joe W. Johnson have appealed.

The facts appear to be as follows:

On May 20, 1845, one William Johnson, Sr., conveyed the land in question to his son, Giles Johnson. The deed did not contain words of inheritance, and consequently passed only a life estate to the grantee. No effort has been made to reform the deed. Giles Johnson owned considerable real estate besides the tract sought to be partitioned, and in 1869 conveyed to each of his children, including Melissa Hicks, from whom the defendant Joe W. Johnson claims, a tract of about equal value with the others. The tract conveyed to Melissa Hicks lay in Chesterfield County adjoining the County of Darlington in which the

tract in dispute lies, both tracts being quite near, if not bounded by, the county line. It does not appear that the tract in dispute was conveyed or devised to any one.

From all that appears to the contrary, Giles Johnson remained in possession of the tract in dispute from 1845 to his death in 1885 or 1886. It was practically all in timber land at the time of his death, and continued so with the exception of 4 or 5 acres which were cleared thereafter and cultivated by one of the heirs other than Melissa Hicks. There were no improvements of any kind upon it; Melissa Hicks lived upon an adjoining piece of land. The evidence shows that it was considered common to any of the heirs who desired to go upon it for firewood, timber, straw, etc. It was never surveyed until after the death of Melissa Hicks in 1924 or 1925. There is scant evidence of her possession other than the fact that she sold a certain quantity of timber on the place, and did not do that until she had consulted the administrator of her father's estate, to whom she paid a part of the proceeds of the sale, some $500. There is some evidence of certain declarations of Melissa's to the effect that she claimed the land, as well as other declarations to the effect that it belonged to the estate; there is no evidence that she ever took exclusive possession of the land, or had notified any of the other heirs that she was claiming it as her own; no evidence that she had had it surveyed; no act of ownership or possession inconsistent with her possession, if there could be said to have been any possession, inconsistent with her posession as a cotenant of the other heirs of Giles Johnson.

On November 7, 1905, Melissa Hicks conveyed the tract to T. R. Howle, in consideration of $300, describing it as: "The same being the lands conveyed to Giles Johnson by William Johnson, Sr., and by Giles Johnson to Melissa J. Johnson (Hicks) and Gillis Johnson, by deed dated ———— day of April, 1869." Of this supposed deed there is no evidence; the Gillis Johnson referred to was a son of Giles

Johnson; he has disappeared "without a trace," and has not been heard from for many, many years.

On December 7, 1905, T. R. Howle reconveyed the tract to Melissa Hicks, in consideration of $600. The description in the deed from Melissa Hicks to Howle, referred to above, is omitted in this deed.

On December 8, 1905, the day after the deed last referred to, Melissa Hicks conveyed the tract to the defendant Joe W. Johnson, in consideration of $138, reserving to herself a life estate in the land. The description in the deed from Melissa Hicks to Howle, referred to above, is omitted in this deed also. The defendant Joe W. Johnson testified that the consideration of this deed was the payment by him of the delinquent taxes upon the property. An exhibit produced by him showed a receipt for the taxes amounting to $73.69.

*As to the title of the heirs:* The defendant Joe W. Johnson claims title from Melissa Hicks; she claimed title from Giles Johnson. The heirs claim title from Giles Johnson. Both sets of contestants claim title from a common source. The issue of evidence tending to sustain the title of the heirs is concluded by a long line of decisions in this State.

In *Pinckney v. Knowles,* 112 S. C., 7, 99 S. E., 354, in an opinion by the present Chief Justice, it is said: "The evidence before his Honor shows that both parties claim from a common source. By this admission the identity of the land sued for is fixed, and plaintiffs are absolved from proving any other title; the question then being, which has the better title from the common source? The title then can be proved by deed, descent, or devise. * * * When plaintiffs proved the death of Huguenin, the owner of land in dispute at that time, the presumption of law was that the land descended to his heirs at law, and even though his widow testified that he left a will did not overcome this presumption. * * * When the plaintiffs proved they were heirs at law of Huguenin, his death, and his title to land at his death,

then their title to land at that time is *prima facie* complete, and it is incumbent on defendants to show that Huguenin left a will and devised the land differently." See, also, *Smythe v. Tolbert,* 22 S. C., 133; *Rhett v. Jenkins,* 25 S. C., 453; *Bradley v. Drayton,* 48 S. C., 234, 26 S. E., 613; *Thomas v. Dempsey,* 53 S. C., 216, 31 S. E., 231; *Bryce v. Cayce,* 62 S. C., 546, 40 S. E., 948; *Kilgore v. Kirkland,* 69 S. C., 78, 48 S. E., 44; *Bethea v. Allen,* 95 S. C., 479, 79 S. E., 639.

We think that it was error therefore for his Honor to hold: "It is, therefore, manifest that the plaintiffs have failed to prove that they own any interest in the land in question and, consequently, cannot recover. It avails them nothing to say that the title of Joe W. Johnson is not good, because they must recover, if at all on the strength of their own title."

*As to the title of Melissa Hicks:* There is nothing to show any foundation for a title in her outside of her right as an heir at law of Giles Johnson. That being so, her possession, if she ever had any, which we doubt, must be attributable to that right, the right of a cotenant, which can never ripen into an adverse title without clear evidence of an ouster, of which there is not a particle of evidence. "The presumption is that the possession of the tenant in common is for the benefit of all, and before the statute can begin to run it must appear that the holding tenant claimed the property as his own and has in unequivocal terms so notified the others. *Villard v. Robert,* 1 Strob. Eq., 393; *Gray v. Givens,* 2 Hill Eq., 511; *Burnett v. Crawford,* 50 S. C., 161, 27 S. E., 645; *McGee v. Hall,* 26 S. C., 179, 1 S. E., 711; *Jefcoat v. Knotts,* 13 Rich. Law, 50; *Gray v. Bates,* 3 Strob., 498; *Metz v. Metz,* 48 S. C., 472, 26 S. E., 787; *Coleman v. Coleman,* 71 S. C., 518, 51 S. E., 250; *Powers v. Smith,* 80 S. C., 110, 61 S. E., 222."

In *Bradley v. Calhoun,* 125 S. C., 82, 117 S. E., 815, the Court said: "The principal is just and well-established that, where one's possession was begun in privity with or in sub-

servience to the title of another, a *quasi* fiduciary relation is established, and before a foundation can be laid for the operations of the Statute of Limitations or the defense of adverse possession by the acquisition of an outstanding title, a clear, positive, and continued disclaimer of the title under which he entered and the assertion of an adverse claim must be brought home to the other party. Until the trust is openly repudiated, the *cestui que* trust may rely upon the integrity of the trustee without endangering his right by lapse of time."

In *Sudduth v. Sumeral,* 61 S. C., 288, 39 S. E., 539, 85 Am. St. Rep., 883, the Court said: "It is quite true, that if a person goes into possession of a tract of land as a tenant in common with another, no length of such possession can give him a title by the Statute of Limitations against his co-tenant, for the very obvious reason that his possession cannot be adverse to his co-tenant, until an ouster is established."

*As to the title of Joe W. Johnson:* Under the deed from Melissa Hicks he held the fee subject to her life estate. He had no cause of action until the life estate fell in; he had no right of possession until then. She died in 1924 or 1925. Hence his possession could not commence, and he makes no contrary claim, until that time. His defense of adverse possession cannot therefore be considered.

The judgment of this Court is that the decree appealed from be reversed and that the case be remanded to the Circuit Court for further proceedings consistent herewith.

Mr. Chief Justice Watts and Messrs. Justices Blease, Stabler and Carter concur.