16661

TERWILLIGER v. WHITE
(72 S. E. (2d) 169)

*Messrs. Williams & Busbee,* of Aiken, *for Appellant,* 

*Messrs. Henderson & Salley,* of Aiken, *for Respondent,*

*Messrs. Williams & Busbee,* of Aiken, *for Appellant, on Petition for Re-Hearing.*

*Messrs. Henderson, Salley & Cushman,* of Aiken, *for Respondent, on Petition for Re-Hearing.*

Aug. 22, 1952.

FISHBURNE, Justice.

This was an action to try title to a small lot of land which the plaintiff claims to have acquired by adverse possession. The jury found for the defendant, Malinda Green White, and awarded damages, actual and punitive. The appeal brings up for review several questions, but the main issue, as we view it, is whether the trial court erred in refusing to direct a verdict in favor of appellant.

We will not undertake to state in detail the testimony relating to the character of the adverse possession asserted by appellant. A general review of the evidence will demonstrate that in submitting the case to the jury, the court adopted the correct course.

Shortly before April 8, 1908, appellant's father, L. M. C. Oliveros, and W. W. Holley organized and obtained a charter for a corporation which was given the name of Oliveros-Holley Land Company, each owning one-half the corporate stock. Thereafter, the corporation purchased four hundred acres of land about three miles out of Aiken on the Edgefield Highway, for the purpose of subdividing it into blocks, lots and streets as a residential development, and gave it the name "Aiken Heights." The corporation sold over 300 lots, comprising about 100 acres of the tract, and made conveyances, therefor, which were recorded in the office of the Clerk of Court for Aiken County. The lots conveyed by the corporation were scattered over the tract and did not adjoin; the unsold lots between were retained by the corporation in the hope and with the expectation that the purchasers of the other lots would erect dwellings thereon, and that thereby the value of the unsold lots would be enhanced. Apparently the last lot sold and conveyed was in 1913.

The undertaking was a complete failure as a residential development. Not one house was built by a single purchaser on this large tract of land, which consisted of woods, highland and bottom land. Thereafter, it may be inferred, W. W. Holley transferred his stock to Oliveros, and he became the sole owner of the corporation. However, no transfer or certificate of stock or deed was introduced in evidence. The appellant, who is a daughter of Oliveros, simply testified that her father acquired the interest of Holley.

The record tends to show that some time after the last of the 300 lots was sold in 1913, Oliveros conceived the plan of regaining and re-acquiring title by adverse possession against the scores of purchasers who had bought and paid for their lots. This was evidently thought feasible upon the

theory that the lots were sold for a small consideration, the purchasers appeared disinterested, no dwellings had been erected, and that possession could be taken without serious opposition from the widely scattered grantees.

The respondent,—a colored woman and a resident of Aiken County,—was one of the first purchasers of lots in the subdivision. On April 8, 1908 she bought and paid for a lot described as Lot 28 in Block B of the subdivision known as "Aiken Heights", according to a plat thereof made by P. S. Norris, C. E. in 1907. She promptly recorded her warranty deed obtained from the Land Company, returned the lot for taxation and continuously, without lapse, paid the taxes thereon from the date of purchase until the present time. This deed was duly executed by W. W. Holley, President, and L. M. C. Oliveros, Secretary.

Oliveros found is impossible through succeeding years to sell any portion of the 400 acre tract, due to the fact that prospective purchasers questioned the validity of his title. He died in 1936, presumably intestate, and his daughter, the appellant, who lived with him, now claims that upon his death she continued in adverse possession of all the lots which had been conveyed by the corporation; and that her possession, for ten years, and for twenty years, may be tacked to his because no new entry was made.

Appellant, finding it impossible, likewise, to interest any purchasers, brought this action against respondent and against all other grantees, for the purpose of excluding all parties defendant from any interest in the 400 acres which originally belonged to Oliveros-Holley Land Company. Apparently, all of the parties defendant defaulted except about six, including the defendant, and they answered the complaint setting up title.

The evidence offered by appellant as to adverse possession from 1913 until this action was commenced, in 1947, is weak and inconclusive. The testimony shows that some parts of the 400 acre tract were farmed by the Oliveros

tenants, and it may reasonably be inferred, that the stakes which originally marked the corners of lots throughout the tract, were plowed up by them. But the mere fact that Mr. Oliveros and his daughter, the appellant, after his death, might have carried on some sort of intermittent farming operations and continued to use the lot in question in connection with the unsold lots, is no conclusive evidence that their possession was adverse, exclusive and hostile to the respondent. There is no definite evidence that appellant or her father, after the execution of the deed to respondent, ever actually planted or used any portion of respondent's lot. There is some vague testimony that perhaps some few feet of it had been plowed one time; but the appellant contends that it was plowed and planted from year to year. No testimony was offered by her as to exact location or the identity of this lot of respondent.

The record shows that respondent had her lot surveyed and staked out in 1910,—two years after she purchased it. From time to time she leased her small lot—50′ x 125′— to various persons who planted potatoes thereon, and gave her as rent a portion of the potatoes in lieu of money.

In 1930 she again had the lot surveyed, this time by a Mr. McCullough, who placed iron stakes at the corners of the lot. All of these stakes were run over and torn up by tractors which, it may reasonably be inferred, were operated by a tenant of appellant. Thereafter, respondent had painted and placed in the middle of her lot a "No Trespass" sign. This also was destroyed. In 1946 she had published in the Aiken Sentinel and Review, a notice forbidding trespass on this particular lot; and on October 2, 1946, prior to the commencement of this action, she had her attorneys send a formal letter to appellant, warning her not to trespass on the lot in question. According to her testimony, appellant promised to exchange for the lot in question, one better situated; but this was never done. We might add that neither appellant nor her father ever returned this land for taxation until 1945, prior to the institution of this suit.

The failure to pay taxes is evidence that no claim was made. *Gadsden v. West Shore Inv. Co.,* 99 S. C. 172, 82 S. E. 1052; *Harrelson v. Reaves,* 219 S. C. 394, 65 S. E. (2d) 478.

It is needless to make any further survey of the testimony presented. The evidence clearly made a jury question on the issue of adverse possession.

Although appellant advances the claim that her father, Oliveros, entered and took possession of respondent's lot as an individual, it is not altogether clear from the record whether the claim was personal to him or made by the Land Company,—all the stock of which he claimed to own. It is argued that the corporation went out of existence through disuse.

The rule stated in *Love v. Turner,* 78 S. C. 513, 59 S. E. 529, is quoted with approval in the recent decision of our Court in *Griggs v. Griggs,* 199 S. C. 295, 19 S. E. (2d) 477, 479, as follows: "By the execution and delivery of a deed of land, the entire legal interest in the premises vests in the grantee, and, if the grantor continues in possession afterward, his possession will be that either of tenant or trustee of the grantee. He will be regarded as holding the premises in subserviency to the grantee, and nothing short of an explicit disclaimer of such relation, and a notorious assertion of right in himself, will be sufficient to change the character of his possession, and render it adverse to the grantee." And see 1 Am. Jur., Sec. 47, Page 818.

The foregoing rule is in accord with Code Section 377, which provides that in every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the premises shall be presumed to be possessed thereof within the time required by law; and the occupation of such premises by any other person shall be deemed to have been under and in subordination to the legal title unless it appear that such premises have been held and pos-

sessed adversely to such legal title for ten years before the commencement of such action.

But irrespective of whether Oliveros, appellant's father, should be regarded as grantor by reason of his ownership of the Land Company, or whether as an individual the testimony in this case concerning the nature of his and appellant's possession, and that offered by respondent,—made an issue for the jury. *Cathcart v. Matthews,* 105 S. C. 329, 89 S. E. 1021. It was for the jury to say whether such possession was actual, open, exclusive and notorious. *Western v. Morgan,* 162 S. C. 177, 160 S. E. 436.

Error is assigned because it is said that the trial court refused to allow appellant to state that the lots were sold by the Land Company in furtherance of a residential development, and that no purchaser built a house on his lot. We see no merit in this contention. In the "Agreed Statement" contained in the printed record, the recital is made that the corporation was organized for the purpose of subdividing the tract into lots and selling such lots as a development; but aside from this, it was testified to more than once, without objection, that none of the purchasers built a house on the tract, and that the lots were sold originally to promote a residential development. Furthermore, none of the deeds contained any covenants or restrictions, and imposed no duty on any grantee to develop or build.

Appellant next complains that the trial court erred in striking out the testimony of the witness, Mrs. Brinson, as to certain declarations made to this witness by Dr. Williams, now deceased, to the effect that he had been renting and cultivating some of this large tract for several years prior to 1939.

This testimony was clearly hearsay, and the court committed no error in excluding it.

Nor is there any merit in the exception raising the issue that certain testimony given by John Beane was wrongfully admitted. It appears that Beane had

for several years, rented certain portions of the tract from the mother of the plaintiff, Mrs. Oliveros, and he was allowed to testify that he was at the same time share-cropping or renting the small lot of respondent. It is argued that the witness was thereby permitted to dispute his landlord's title. Beane made it clear that he was not renting and never had rented respondent's lot from the Oliveros family, and that he sharecropped the lot of respondent separate and apart from that portion of the large tract he rented from appellant.

Nor did the court commit error in refusing cross examination of the surveyor, Mr. McCullough, as to whether or not he located some other lot in this tract to the satisfaction of some person named John Corley. This matter was irrelevant to the issue involved in the current case.

It is contended that the trial court committed certain errors of omission and commission in charging the jury. For instance, it is argued that the court charged only the principles of law relating to adverse possession. It is now contended that appellant also claimed this lot of land by purchase, inheritance and prescription. However, appellant, when on the stand, frankly stated that she claimed the lot in question by adverse possession, and that she had no deed therefor. The court was entirely correct in omitting from its charge any reference to any claim of title on her part by deed.

It is next asserted that the court erred in giving this charge: "You can show adverse possession for a ten year period, if you know that you have, yourself, been in possession for the entire period of ten years, or those from whom you inherited;" the error being that a daughter can tack the possession of her father to make up the ten years, and it is not the law that each must hold for ten years. It is argued that this charge would have a tendency to confuse the jury.

Upon consideration of the petition for rehearing filed by the appellant in this case, we ordered a rehearing "on the

facts and the law dealing with adverse possession; and that the rehearing be confined solely to that issue."

A rehearing was held, and we now come to a reconsideration of the issue raised by appellant on the question of adverse possession, and to determine if error is contained in the charge given to the jury.

In addition to that portion of the instruction given to the jury hereinabove quoted, the trial judge stated:

"Now, to show 20 years it is (not) necessary you alone should be in possession the full 20 years. Possession could have changed every year, you could tack together your possession with those who owned it ahead of you and that is the difference between the 10- and 20-year period and I repeat under the 20-year statute it is (not) necessary to show you have been in there, yourself, the entire 20 years or your ancestor, or any number of people but combined together as you hold under the same claim and under each other's rights and hold it for the full period of 20 years, all combined.

"I charge you, gentlemen of the jury, if the plaintiff has failed to establish, by the greater weight of the evidence, that she has established a title to this lot of land by adverse possession for either a period of 10 or 21 years, then she has failed and could not recover"

We think the inevitable conclusion to be drawn on consideration of the charge given is that insofar as the 10-year period of adverse possession is concerned, the jury was told that ancestor and heir could not tack their possession. This was emphasized by his distinction that there could be tacking of possession under the twenty year statute. It was the duty of the jury to determine the issue of adverse possession.

"The possession of ancestor and heir may be tacked to show 20 years' possession so as to presume a grant, or 10 years' adverse possession so as to make out title by adverse possession, becaue there is no break in the continuity of possession. *Duren v. Kee,* 26 S. C. 219, 2 S. E. 4; *Epper-*

*son v. Stansill,* 64 S. C. [485] 488, 42 S. E. 426; *Kilgore v. Kirkland,* 69 S. C. [78] 85, 48 S. E. 44." *Bardin v. Commercial Ins..& Trust Co.,* 82 S. C. 358, 64 S. E. 165.

The jury rendered a verdict in favor of respondent for $25.00, actual damages, and $275.00 punitive damages. Appellant does not appeal from the judgment entered for actual damages, but claims that the court erred in submitting the question of punitive damages to the jury. We think the evidence warranted submission of this issue to the jury, and no further review of it here is necessary. The jury was justified in drawing the inference that there was a gross and willful disregard of the rights of the respondent.

In view of the error contained in the charge of the trial judge to the jury on adverse possession, a new trial must be granted; and it is so ordered. The opinion previously filed in this case is withdrawn, and this opinion will be substituted therefor.

Judgment reversed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.