17150

GEORGE PHILIP CROTWELL *ET AL.*, Respondents, v. WILLIAM B. WHITNEY *ET AL.*, Appellants

(92 S. E. (2d) 473)

214

Messrs. *Larkin H. Jennings,* of Union, and *Roberts & Jennings,* of Columbia, *for Appellants,*

Messrs. *Pope & Greene,* of Newberry, *for Respondents,*

April 26, 1956.

LEGGE, Justice.

The children of Samuel P. Crotwell brought this action to recover from William B. Whitney and Julius Titus a tract of land in Newberry County comprising about three hundred twenty acres. Joined as defendants were Willie D. Summer, a predecessor in title to Whitney, and Arthur State Bank, Whitney's mortgagee. Plaintiffs founded their claim of title upon a deed executed by their father; defendants pleaded a

tax deed, adverse possession, presumption of a grant, and laches. From a judgment in favor of the plaintiffs, only Whitney and the bank have appealed.

James A. Crotwell, grandfather of the plaintiffs, died a resident of Newberry County on April 4, 1893. In paragraph 2 of his will he provided that when his son, Samuel P. Crotwell, should arrive at the age of twenty-one years, all of his real estate in Newberry County should be divided equally between his said son and his daughter, Clara B. Matthews, and that "the share of my said real estate in Newberry County hereby devised to each of my said children shall vest to him or her for his or her life, and after the death of either child shall go, in fee simple absolute, to the issue of such child, *per stirpes*"; and provision followed for remainders over in the event that either or both of the testator's said children should die leaving no issue surviving.

In 1896, Samuel P. Crotwell having come of age, a division of his father's lands was made between him and Clara B. Matthews. Among the lands allotted to Samuel P. Crotwell in this division was the Crotwell Hotel property in the town of Newberry.

In 1915, Samuel P. Crotwell brought an action in the court of common pleas for Newberry County for the purpose of selling the Crotwell Hotel property and investing the proceeds of the sale in a mortgage on the hotel property and certain lands in the State of Georgia. All of the children of Samuel P. Crotwell, and all other persons who might have an interest under paragraph 2 of the will of James A. Crotwell, were made parties to this action. On November 14, 1916, in the same action, Samuel P. Crotwell filed his petition asking that the court authorize and direct the Master for Newberry County to transfer to the said Samuel P. Crotwell the note and mortgage covering the hotel property, freed and discharged of all the terms and limitations of the will of James A. Crotwell, when the said Samuel P. Crotwell should convey certain lands owned by him in Newberry County to himself for life with remainder to his children, subject to

all the terms and limitations that had been placed upon the said hotel property by the will of James A. Crotwell. On December 8, 1916, pursuant to an order of the court granting the petition before mentioned, Samuel P. Crotwell conveyed three tracts of land in Newberry County, among them the tract that is the subject of the present action, "unto Samuel P. Crotwell for and during his natural life, and after his death to his children on the same terms, conditions and limitations as set out in paragraph 2 of the Last Will and Testament of James A. Crotwell, deceased".

Thereafter, Samuel P. Crotwell moved to the State of Georgia, where he died on February 18, 1936, leaving surviving him as his children and only issue the seven plaintiffs in the present action, all then over the age of twenty-one years.

Samuel P. Crotwell failed to pay the 1926 and 1927 state and county taxes on the tract of three hundred twenty acres with which we are here concerned, and on sales day in March, 1928, after proper levy and due advertisement, the sheriff of Newberry County sold it for unpaid taxes. The defendant Willie D. Summer was the highest bidder at the sale, and on March 15, 1929, the sheriff executed and delivered to him his deed of conveyance, the consideration recited being $138.27.

By deed dated January 5, 1932, Willie D. Summer conveyed the tract to Julius Titus for a recited consideration of $600.00, the warranty in the deed being against the grantor "and no other persons".

It appears from the Statement in the transcript of record that Titus had been reared by his uncle, Robert Whitney, the father of the defendant William B. Whitney; that Robert Whitney and one J. J. Welch were in the lumber and timber business together; that the purchase price for the property in question was paid by Robert Whitney and Welch, to whom Titus had advanced $200.00 as a down payment, which Robert Whitney and Welch later repaid to him; and

that Titus never considered himself to be the owner of the property, but understood that he was holding title for Whitney and Welch. The purpose of this arrangement was, according to the testimony of William B. Whitney, to enable deeds and mortgages affecting the property to be executed without renunciations of dower, Titus being unmarried; and for his part in the transaction Titus was to receive a tract of five acres which was to be carved out of the tract in question.

Robert Whitney died intestate in March, 1936, leaving as his heirs his widow, Susie E. Whitney, and four children, Albert, Robert L., William B., and Tinsley Whitney. Albert died about the year 1941, intestate, childless and unmarried, leaving as his heirs his mother, Susie E. Whitney, and his three brothers before mentioned. At the time of his death Albert Whitney and J. J. Welch owned as tenants in common a tract of 370 acres in Union County. By deed dated September 19, 1942, Robert L. Whitney, William B. Whitney and Tinsley Whitney conveyed to their mother, Susie E. Whitney, all of their interest in this tract. It appears also that the three Whitney boys discussed the matter of conveying to their mother their interest in the Crotwell tract, but there is no deed of record indicating that such conveyance was ever made. However, when Susie E. Whitney died, in October, 1942, she left a will purporting to devise an undivided one-half interest in the 320 acres of land in Newberry County known as the "Crotwell Place" to her son William B. Whitney.

By deed dated January 28, 1943, Robert L. Whitney, William B. Whitney and Tinsley Whitney conveyed their interest in the 370-acre tract in Union County to J. J. Welch, the consideration recited in the deed being "exchange of real estate by title".

By deed dated January 29, 1943, Julius Titus, at the direction of J. J. Welch, conveyed the Crotwell tract of 320 acres in Newberry County to William B. Whitney.

By deed dated December 31, 1946, William B. Whitney conveyed to Julius Titus five acres of land carved from the Crotwell tract, and there Titus now lives.

On February 18, 1950, William B. Whitney executed and delivered to Arthur State Bank, as security for his note in the amount of $2,000.00, a mortgage of the Crotwell tract less the five acres conveyed to Titus.

The present action was commenced on April 6, 1951. It was referred by consent to the Honorable C. E. Saint-Amand as Special Referee, who in due course filed his report in which he recommended that the plaintiffs be adjudged the legal owners of the tract and that they be placed in possession. He also found that the defendant William B. Whitney was not entitled to redress against either Julius Titus or Willie D. Summer for any expenditures made by Whitney in connection with the purchase and subsequent improvement of the property, the payment of taxes thereon, and the expenses of the present action. And he further recommended that the defendants in possession be required to account to the plaintiffs for their use of the premises. Exceptions to the referee's report were filed by the defendants William B. Whitney and Arthur State Bank only. The matter then came on to be heard before the Honorable Steve C. Griffith, Judge of the Eighth Circuit, who by his decree of January 26, 1955, from which this appeal is taken, adjudged the plaintiffs to be the owners and entitled to possession of the tract of land in question, that the accounting as recommended by the Special Referee he had, and that the cause remain open for the accounting and for such orders as might be necessary to place the plaintiffs in possession.

The questions raised by the exceptions are stated by appellants as follows:

1. Did Samuel P. Crotwell own the legal fee at the time of tax sale so that the two-year statute and the twenty-year presumption bar the plaintiffs from recovery?

2. Are the plaintiffs barred by adverse possession?

3. Are the plaintiffs barred by laches?

We are unable to agree with appellants' theory that after the execution of his deed of December 8, 1916, the fee in the tract in question still remained in

Samuel P. Crotwell, but "was impressed with a trust to go after his death according to the terms of his father's will",— a theory for which appellants cite no authority, and which is without factual support in the record before us. The conveyance was made, pursuant to an order of court, "unto Samuel P. Crotwell, for and during his natural life, and after his death to his children on the same terms, conditions and limitations as set out in paragraph 2 of the Last Will and Testament of James A. Crotwell, deceased." The effect of the deed was to create, in the property so conveyed, the identical tenure by which the Crotwell Hotel property had been devised under the will of James A. Crotwell. By the terms of that devise, Samuel P. Crotwell took a life estate only; and in the subsequent transaction in 1916 neither the intention of the parties, nor the order of the court, nor the language of the deed suggest any greater or other estate in him. The reference in the habendum to the estates created under paragraph 2 of the will of James A. Crotwell was effectual to incorporate those provisions of the will into the deed. *Izard v. Montgomery,* 1 Nott & McC. 381; *Dawson v. Dawson,* Rice, Eq. 243.

Samuel P. Crotwell having only a life estate in the property, his failure to pay the 1926 and 1927 taxes did not affect the interests of the remaindermen, and only his life interest passed to the purchaser at the tax sale in 1928. *Bolt v. Sullivan,* 173 S. C. 24, 174 S. E. 491. The two-year statute of limitation, Code 1952, Section 65-2779, is therefore not applicable to the plaintiff's cause of action, which did not accrue until the death of the life tenant in 1936. For the same reason, there is no merit in appellants' contention that the twenty-year period of possession giving rise to the presumption of a grant commenced to run when Willie D. Summer, the purchaser at the tax sale, entered into possession under the sheriff's deed in 1929.

Plaintiffs having established their legal title to the premises, appellant Whitney's claim of title by adverse possession required proof of actual, open, no-

torious, hostile, continuous and exclusive possession by him, or by one or more persons through whom he claimed, for the full statutory period of ten years, without tacking of possession except by descent cast. Code 1952, Sections 10-2421, 10-124; *Ellen v. Ellen,* 16 S. C. 132; *Burnett v. Crawford,* 50 S. C. 161, 27 S. E. 645; *Epperson v. Stansill,* 64 S. C. 485, 42 S. E. 426; *Haithcock v. Haithcock,* 123 S. C. 61, 115 S. E. 727; *Terwilliger v. Marion,* 222 S. C. 185, 72 S. E. (2d) 165; *Gregg v. Moore,* 226 S. C. 366, 85 S. E. (2d) 279. Since possession adverse to plaintiffs' title as remaindermen could not begin until the death of the life tenant, it is apparent from the chronology of the case as hereinbefore stated that the claim of title by adverse possession has failed for lack of continuity in any claimant during the ten-year period required by the statute.

Appellants argue, however, that Titus held title as trustee; that his conveyance to William B. Whitney in 1943 in effect transferred the title to the latter as trustee for those beneficially entitled; and that therefore there has been continuity of adverse possession in the original trustee and his said successor trustee, at least to the extent of Robert Whitney's beneficial interest, for more than ten years, to wit: from the death of Samuel P. Crotwell in 1936 to the commencement of the present action in 1951. They also suggest that as to the portion of Robert Whitney's undivided interest that decended at his death to the defendant William B. Whitney, adverse possession has continued unbroken from 1936 to 1951,—a view of the matter in which adverse possession is considered to be that of the *cestuis que trustent,* rather than of the trustee.

There are at least three reasons why these ingenious theories, in support of which appellants cite no authority, cannot prevail. In the first place, to permit the heir of an alleged beneficiary of a secret trust, where the trustee has been in possession of land under color of title in himself individually, to establish adverse possession by tacking his alleged beneficial interest to that of his

ancestor, would open wide the door to fraud. If he may thus establish adverse possession, he may equally well establish it by tacking such beneficial interest of anyone through whom he claims to the beneficial interest of the ancestor of such person. Under such a theory ownership of real property would be insecure against the claim of the last of several successive trespassers, none of whom had been in possession, individually or including inheritance, for the full statutory period, and of some of whom the legal owner might never have known or had means of knowing; and the protection now afforded the landowner under the ten-year statute could be thus effectually destroyed.

Moreover, in the case at bar the acts of the adverse claimants are inconsistent with either the theory of descent cast or that of substitution of a trustee. While there is no recorded conveyance of the property, or their interest in it, from the children of Robert Whitney to their mother, they evidently intended to make such conveyance and thought that they had done so, for her will purported to devise an undivided one-half interest in it to the defendant William B. Whitney, as before stated; and, further, the inventory and appraisement of her estate as filed by her executors, of whom William B. Whitney was one, lists the entire property in question as one of the assets of her estate. Nor does the deed from Titus to William B. Whitney in 1943 contain any recital suggesting trusteeship in either grantor or grantee. And the idea that William B. Whitney considered the property as having been transferred to him in trust is further negated by his mortgage of it to Arthur State Bank.

Finally, the issue of adverse possession being a legal one, its determination by the lower court, which is not without reasonable support in the evidence, is binding upon us. *Fogle v. Void,* 223 S. C. 83, 74 S. E. (2d) 358; *Phillips v. DuBose,* 223 S. C. 224, 75 S. E. (2d) 56; *Knight v. Hilton,* 224 S. C. 452, 79 S. E. (2d) 871; *Seagle v. Montgomery,* 227 S. C. 436, 88 S. E. (2d) 357.

Appellants cannot invoke the equitable defense of laches here, because this is an action by the holders of the legal title to recover land to which appellants could base their claim only upon adverse possession. The rights of the parties were therefore determinable under the time limitations prescribed by Sections 10-124 and 10-2421 of the 1952 Code. Laches within the period of the statute of limitations is no defense at law. 34 Am. Jur., Limitation of Actions, Section 47, p. 47; 30 C. J. S., Equity, § 113, p. 523; *McGee v. Hall,* 26 S. C. 179, 1 S. E. 711; *United States v. Mack,* 295 U. S. 480, 55 S. Ct. 813, 79 L. Ed. 1559.

The judgment is affirmed and the cause remanded for further proceedings consonant with the decree of the circuit court.

STUKES, C. J., and TAYLOR and OXNER, JJ., and G. BADGER BAKER, Acting Associate Justice, concur.