## 17745

Watt E. SMITH and Talley E. Smith, Respondents, v. SOUTHERN RAILWAY—CAROLINA DIVISION, Appellant

(118 S. E. (2d) 440)

*Messrs. Moss & Moss,* of Orangeburg, and *Frank G. Tompkins, Jr.,* of Columbia, *for Appellant,*

*Messrs. T. B. Bryant, Jr.,* and *Fred R. Fanning, Jr.,* of Orangeburg, *for Respondents,*

February 9, 1961.

Oxner, Justice.

The question for determination on this appeal is whether the evidence is sufficient to sustain a finding by the jury that respondents acquired title by adverse possession to a portion

of appellant's right of way. The Southern Railway passes through a farm in Orangeburg County owned by respondents, father and son. In this area it is straight and runs north and south. It is conceded for the purpose of this case that appellant originally had fee simple title to a right of way through respondents' farm extending 100 feet from the center of the track on each side. Respondents say that the western side now extends only 35 feet from the center of the track and that they have been in exclusive possession under a claim of ownership of the remaining 65 feet for a period of more than 40 years, with full knowledge on the part of appellant of the adverse character of their claim.

The present controversy as to the title to the 65 foot strip above mentioned arose shortly after one of appellant's freight trains was derailed on August 28, 1955, at which time 33 boxcars turned over. Respondents were then cultivating the lands on both sides of the railroad to within 35 feet of the center of the track. In clearing the wreck, appellant damaged the crops and lands on the western side of the track both within and beyond the 65 foot strip. Appellant admitted its liability for any damage sustained on the land lying more than 100 feet from the track, but denied liability for any damage within the 65 foot strip. Thereafter this action was brought for the recovery of all damages sustained. The case was submitted to the jury on special issues. They found (1) that respondents had acquired title to the 65 foot strip by adverse possession; (2) that the damage within the 65 foot strip amounted to $358.80; and (3) that the damage beyond the 65 foot strip amounted to $100.00. No question is raised on this appeal as to the extent of the damages found by the jury. Appellant further admits its liability for the sum of $100.00, damage occurring on land admittedly owned by respondents. Its sole contention on this appeal is that there is no evidence sustaining the finding of adverse possession as to the 65 foot strip and, therefore, the Court erred in submitting to the jury the question of any damages sustained within this area.

The facts relating to the claim of adverse possession are undisputed. Respondents acquired this farm in 1917. There was then on it a three-strand barbed wire fence, about a third of a mile in length, which ran parallel to the railroad, about 35 feet west of the center of the track. The record does not disclose when or under what circumstances this fence was built. After buying this farm, respondents extended the fence for a distance of approximately a half-mile to another fence. The new fence was also located on a line 35 feet from the center of the track. In erecting it, cypress posts were first used but later the barbed wire was attached to creosoted posts. In the summer the land within the fence was cultivated and in the winter used to graze cattle. Each spring the new fence was removed so as to permit the use of tractors in cultivating. When the crops were harvested in the fall, the fence was replaced to confine the cattle. This practice of removing the fence in the spring and replacing it in the fall continued each year without objection from appellant until about the year 1931 or 1932, when appellant's section master sought to stop respondents from replacing the fence, contending that it was on the railroad property. This employee was thereupon told by respondent Watt E. Smith that it was his property and that the "safest place" for him (the section master) "would be on the railroad." The section master then got off the property and the fence was replaced. The fencing practice above outlined was thereafter continued without any further objection from the railroad until this action was commenced in 1957.

While there is a diversity of opinion in other jurisdictions, it has been consistently held in this State, in line with the great weight of authority elsewhere, that land embraced within a railroad right of way may under certain circumstances be acquired by adverse possession. This doctrine was recognized in the recent case of *Southern Railway—Carolina Division v. Horne Investment Co.*, 233 S. C. 440, 105 S. E. (2d) 527. However, in view of the use made of a railroad right of way, acts ordinarily deemed hos-

tile in other cases may not bear that character where adverse title is claimed against a railroad company. Since frequently such a company has no immediate need for all of its easement, the use of a portion of a right of way by an individual which does not interfere with the use of the way for railroad purposes is presumptively permissive. Accordingly, we have held that the use of such property by an adjacent landowner for agricultural purposes, such as grazing and cultivation, is ordinarily not inconsistent with the enjoyment of the easement and forms no basis for a claim of hostile possession. *Atlantic Coast Line Railroad Company v. Little,* 195 S. C. 455, 12 S. E. (2d) 7. We have further held that merely enclosing a part of a right of way by a fence is not sufficient to put the company on notice of a claim of adverse possession. *Atlantic Coast Line Railroad Co. v. Epperson,* 85 S. C. 134, 67 S. E. 235. But if an adjacent landowner under a claim of ownership encloses a portion of a right of way by a substantial fence and refuses upon demand to remove it, the railroad company is then put on notice of an assertion of hostile possession. Such an assertion of right to exclusive occupancy of the land is not compatible with the right of easement belonging to the railroad company and may form the basis of a claim of adverse possession. The leading case on this question is *Southern Railway Co. v. Beaudrot,* 63 S. C. 266, 41 S. E. 299, 300. It was there stated: "We do not say that the mere use or cultivation of land within the right of way acquired by a railroad company is such adverse use as would give currency to the statute of limitations, unless the use is inconsistent with the easement; but we do say that the enclosing of land within the right of way, under a claim of exclusive right to use and occupation, and a refusal to remove the enclosure after demand therefor, is some evidence of the assertion of a claim incompatible with plaintiff's alleged easement, which, under the issues raised, ought to have been submitted to the jury." To the same effect, see *Hill v. Southern Railroad,* 67 S. C. 548, 46 S. E. 486.

In *Atlantic Coast Line Railroad Company v. Epperson,* *supra,* the Court was asked by the Railroad Company to reconsider the rule laid down in the *Beaudrot case* but the Court refused to disturb it. This rule has been consistently followed and has never been regarded as inconsistent with the rule laid down in *Atlanta & Charlotte Air Line Railroad Co. v. Limestone Globe Land Co.,* 109 S. C. 444, 96 S. E. 188, 190 and repeated in several later cases, that a right of way of a railroad "cannot be lost by prescriptive use or adverse possession unless by the erection of a permanent structure, accompanied by notice to the railroad company of an intention to claim adversely to its right."

In most, if not all, of the foregoing cases the railroad company had a mere easement. Here the claim of adverse possession is strengthened by the fact that appellant had fee simple title to its right of way. We think the evidence fully warrants an inference that the period of adverse possession commenced running when respondents told the section master that they owned the property and replaced the fence over his protest.

But appellant says that even if the statute commenced to run in 1931 or 1932, the continuity of the possession was interrupted each spring when the fence was removed. It is elementary that it is essential to the acquisition of title by adverse possession that the claimant be in continuous and uninterrupted possession for the full statutory period, or as it has been stated, "there must be such continuity of possession as will furnish a cause of action for every day during the whole period required to perfect title by adverse possession." *Cathcart v. Matthews,* 105 S. C. 329, 89 S. E. 1021, 1025.

The sufficiency of the possession to comply with the foregoing rule was stated in the *Cathcart case* as follows: "The rule requiring continuity of possession does not mean that the person in possession, his tenant or agent, must be actually on the land during the whole of the

statutory period. Actual possession, once taken, will continue, though the party taking such possession should not continue to rest with his foot upon the soil, until he be disseised, or until he do some act which amounts to a voluntary abandonment of the possession." The following is taken from 1 Am. Jur., Adverse Possession, Section 149: "The claimant's possession and its continuity will be sufficient if by his acts and conduct it is apparent to men of ordinary prudence that he is asserting and exercising ownership over the property; and for this purpose it is necessary to take into consideration the nature, character, and location of the property and the uses for which it is fitted or to which it has been put." Other authorities on the question of continuity of possession will be found in a well considered opinion by Mr. Justice Moss in *Mullis v. Winchester,* S. C., 118 S. E. (2d) 61.

In *Mahoney v. Southern Railway,* 82 S. C. 215, 64 S. E. 228, 229, the plaintiff, who was claiming title by adverse possession, rented the land in controversy each year to tenants for cultivation or pasturage. It was held that his possession was not broken by the interval of time elapsing between the departure of the tenant cultivating for one year and the entry of the tenant for the next year. The Court there quoted with approval the following from *Wilson v. McLenaghan,* McMul. Eq. 35:

"Where the occupant of land leaves it for a time, *animo revertendi,* his possession continues during such occasional absence; and so, I apprehend, if a tenant quits the premises, the landlord is to be regarded as still in possession, if by taking possession within a reasonable time, or putting in another tenant as soon as one can be procured, he gives evidence that he does not intend to abandon the land. Here the tenant went out when the crop was gathered, and the landlord went in at that season of the year when planting operations usually begin. Possession is matter of fact, and therefore, of evidence; and here was no greater evidence of abandoning possession than would exist where a planter with-

draws his hands from one plantation to another, during the winter, and returns them in the spring—a thing that often occurs, without the slightest suspicion that the possession has been relinquished."

For other cases on the question of whether seasonal occupation or use of land satisfies the requirement of continuity, see annotation in 24 A. L. R. (2d) at page 632.

We cannot say as a matter of law under the foregoing authorities that respondents' possession was broken each year by the removal of the fence. Not only was this a seasonal operation with the *animo revertendi* always present but when the fence was removed, respondents continued to occupy the property by cultivation of the land.

It follows that the finding of the jury on the question of adverse possession and the verdict for damages relating to the land in dispute must be sustained.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.