WIDENER, Circuit Judge:
The Catawba Indian Tribe appeals from an order of the district court granting summary judgment in favor of certain defendants as to a number of parcels of real estate on the ground that those defendants had established the adverse possession requirements of South Carolina. We affirm in part, reverse in part, and vacate and remand in part.
This litigation began when the Tribe filed a complaint and motion to certify a defendant class on October 28, 1980.[1] In the complaint, the Tribe seeks to be declared the owner of approximately 144,000 acres of land that was set aside for the Tribe’s benefit in the 1760 Treaty of Pine Tree Hill and the 1763 Treaty of Augusta and to recover trespass damages for the period of its dispossession. The complaint names seventy-six individuals, companies and public entities as defendants and as representatives of a putative defendant class of more than 27,000 persons with an interest in any portion of the lands in question.
In 1981, the defendants filed a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The motion was based on the effect of the 1959 Catawba Division of Assets Act (Catawba Act), 25 U.S.C. §§ 931-938. The district court treated the motion to dismiss as a Rule 56 motion for summary judgment, granted the defendants’ motion and dismissed the case. The court held that the Catawba Act terminated the special relationship that the Tribe had had with the federal government and that the termination of the special federal status of the Tribe made state law apply to it and any claim it might have. Therefore, South Carolina's adverse possession statute began to run against the Tribe’s claim on July 1, 1962, the date the Tribe’s constitution was revoked pursuant to the Catawba Act. Because South Carolina Code § 15 — 3— 340, the applicable South Carolina statute of limitations, requires actions to recover *1338 title or possession to be brought within ten years, the district court held that the Tribe’s claims were filed eighteen years after the statute began to run and the claims were barred. The court, while noting that South Carolina does not allow a party to obtain title by adverse possession by “tacking” his period of possession to a predecessor's period of possession (unless the land passes by inheritance), held that South Carolina’s non-tacking rule “is not relevant to the defendants’ assertion that the plaintiff’s claims are barred by the statute of limitations.”
First a panel of this court and then the court sitting en banc reversed the district court and held that the state statute of limitations does not apply to the Tribe’s claim. Catawba Indian Tribe v. South Carolina, 718 F.2d 1291, 1300 (4th Cir.1983), adopted en banc, Catawba Indian Tribe v. South Carolina, 740 F.2d 305 (4th Cir.1984). Because this court held that the state statute of limitations does not apply, we did not reach the question of whether the district court had correctly applied the statute of limitations. The Supreme Court then reversed this court and held that the South Carolina statute of limitations does apply to the Tribe’s claim. South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498, 510-11, 106 S.Ct. 2039, 2046-47, 90 L.Ed.2d 490 (1986). The Court then remanded the case to this court for consideration of the district court’s application of the South Carolina statute of limitations to the Tribe’s claim. On remand from the Supreme Court, this court held that the Tribe is entitled to invoke the presumption of possession set forth in S.C.Code § 15-67-220; that the Tribe’s acknowledgement that it did not actually possess the land within the ten year period specified in S.C.Code § 15-3-340 is not a bar to its claim; and that South Carolina’s disallowance of tacking means that the Tribe’s claim is only barred as to those persons who held or whose predecessors held the property for ten years without tacking except by inheritance. We summarized our portion of the holding pertinent to the present matter as follows:
[Ejections 15-3-340[2] and 15-67-210[3] [of the South Carolina Code] bar the tribe’s claim against each person who holds and possesses property that has been held and possessed adversely for 10 years after July 1, 1962, and before October 20, 1980,[4] without tacking except by inheritance, in accordance with South Carolina’s tacking doctrine. The statutes of limitations do not bar the tribe’s claim against other persons. “Persons” includes joint tenants, tenants in common, partnerships, associations, and corporations.
Catawba Indian Tribe v. South Carolina, 865 F.2d 1444, 1456 (4th Cir.), cert. denied, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989). Therefore, on remand from this court, the district court was required to determine which claimants met the adverse possession requirements.
Forty-six of the named defendants filed a supplemental brief and affidavits in support of their summary judgment motion. The district court entered summary judg *1339 ment in a series of orders with respect to certain properties for which summary judgment was sought. The court also dismissed twenty-nine defendants from the case as it determined that summary judgment had been granted as to all property in which they had an interest.

Summary Judgment Standard

Our review of summary judgments is de novo. Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 118 (4th Cir.1991). Summary judgment is appropriate when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.
The party moving for summary judgment has the burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. See 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 2d § 2727 (1983). However, once the moving party has met its burden under Rule 56(c), the adverse party “may not rest upon the mere allegations or denials of the adverse party’s pleading, but the adverse party’s response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” Fed.R.Civ.P. 56(e). The non-moving party “must do more than simply show that there is some metaphysical doubt as to the material facts.” Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. “The mere existence of a scintilla of evidence in support of the [non-moving party’s] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). See also Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985) (“Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes”). “Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no ‘genuine issue for trial’ ” and summary judgment is appropriate. Matsushi-ta, 475 U.S. at 587, 106 S.Ct. at 1356.
I.

South Carolina Adverse Possession Law

“[C]laim of title by adverse possession require[s] proof of actual, open, notorious, hostile, continuous and exclusive possession by [the claimant], or by one or more persons through whom [the claimant] claim[s], for the full statutory period of ten years, without tacking of possession except by descent cast.” Crotwell v. Whitney, 229 S.C. 213, 92 S.E.2d 473, 477 (1956); see S.C.Code § 15-3-340; S.C.Code § 15-67-210. “[T]he burden of proof of adverse possession is on the party relying thereon.” Mullis v. Winchester, 237 S.C. 487, 118 S.E.2d 61, 63 (1961). In South Carolina, “[o]rdinarily, adverse possession is a question of fact for the jury and it becomes a question of law only when the evidence is undisputed and susceptible of but one inference.” Gardner v. Mozingo, 293 S.C. 23, 358 S.E.2d 390, 392 (1987).
II.

Sufficiency of the Allegations in Claimants’ Affidavits

The district court made the following rulings with respect to the sufficiency of the affidavits submitted in support of the claimants’ motions for summary judgment:
A defendant whose uncontroverted affidavit states or shows that he (or his predecessor) has continuously occupied or possessed the property for ten years *1340 (without tacking except by inheritance), has treated the property as his own, paid taxes thereon, maintained the property and taken steps to protect it against trespassers or others who might seek to use it or assert any claim to it, has demonstrated adverse possession of the property-
A defendant whose uncontroverted affidavit states or shows that he (or his predecessor) continuously occupied or possessed property pursuant to color of title for ten years (without tacking except by inheritance) has demonstrated adverse possession of the property.
Mortgage documents are writings sufficient to constitute color of title for purposes of establishing adverse possession.
Timber growing or farming is sufficient occupation or possession of the property to establish adverse possession.
A deed to a husband serves as color of title for his wife if their marriage took place while Dower rights still attached to all lands of which a husband was seized during coverture.
The Tribe argues that the requirements set forth by the district court are insufficient because they do not require allegations of specific acts of possession. They argue that any affidavits which fail to set forth specific acts of possession are insufficient as a matter of law to meet the requirements of adverse possession.
We are of opinion that a claimant who produces affidavits or other sufficient documents establishing without contradiction in fact that he or a predecessor held the record title to the property, possessed, occupied, or held the property, paid taxes on the property, and took steps to protect the property from trespassers for the requisite ten-year period without tacking except by descent, has met his burden under Rule 56(c) of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Therefore, in those cases where the claimant has so met his burden, to avoid summary judgment, the Tribe, by affidavit or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.
“As a general rule, the law presumes that the exclusive possession of land by one who is a stranger to the holder of the legal title is adverse.” Mullis, 118 S.E.2d at 66. In this court’s earlier decision, we determined that if the Tribe held Indian title to the property in question in 1962, then it held the legal title at that time. 865 F.2d 1444, 1451 (4th Cir.1989). Therefore, applying the rule stated in Mullís, any person other than the Tribe who exclusively possessed the property would be a stranger to the holder of the legal title and would be presumed to be holding it adversely.
In addition, when “a person goes into possession of land under a deed from a third person which purports on its face to convey to him an absolute and exclusive title to the entire interest in the land, and such deed is spread upon the public records, this is notice to the world that he is claiming the entire and exclusive interest in the land, and his possession may be adverse to all the world from the time of its commencement.” Sudduth v. Sumeral, 61 S.C. 276, 39 S.E. 534, 539 (1901). “The claimant’s possession and its continuity will be sufficient if by his acts and conduct it is apparent to men of ordinary prudence that he is asserting and exercising ownership over the property; and for this purpose it is necessary to take into consideration the nature, character, and location of the property and the uses for which it is fitted or to which it has been put.” Smith v. Southern Railway, 237 S.C. 597, 118 S.E.2d 440, 443 (1961) (quoting 1 Am.Jur. Adverse Possession § 149).
The Tribe has not met its burden in establishing that there is a genuine issue for trial as to many of the claimants.[5] To *1341 survive the claimants’ motions for summary judgment, the Tribe must establish that there is a genuine issue as to whether the claimants have satisfied South Carolina’s adverse possession requirements: Once a claimant met his burden under Rule 56(c), the Tribe was required to come forward with “specific facts showing that there is a genuine issue for trial.” Fed. R.Civ.P. 56(e).
The Tribe argues that an averment of possession in an affidavit is insufficient to establish possession for summary judgment purposes. We disagree. Once a claimant stated in an affidavit sufficient facts to sustain a motion for summary judgment in his favor, the burden shifted to the Tribe to establish that there is a “material issue of fact.” Affidavits by a claimant that he possessed the property or held and occupied the property as his own, paid taxes on it, and took steps to protect it from trespassers is sufficient to sustain a motion for summary judgment so long as the ten-year requirement is met and the statements were made on personal knowledge. Therefore, in order to avoid summary judgment when faced with such an affidavit, the Tribe was required, by affidavit or as otherwise provided for in Rule 56, to allege facts showing that there is a dispute as to whether a claimant did those things claimed in the affidavit. Absent such a showing, there is no “material issue of fact” and summary judgment was properly granted to the claimant.
Some of the claimants, by affidavit, identified the nature and use of the property they claimed as timber farming, timber growing, timberlands, or tree farm. The Tribe argues that these descriptions are insufficient to sustain a motion for summary judgment. Again, the Tribe has mistaken the summary judgment standard. The statements by the claimants are sufficient to meet the requirements of adverse possession. See Mullis, 118 S.E.2d at 66 (claimant who entered upon the land under color of title and occupied the land for his ordinary use in growing timber upon land and obtaining timber therefrom satisfied adverse possession requirements). Therefore, to avoid having summary judgment granted against them, the Tribe had the burden of disputing, by affidavit or otherwise, that the property was not used for timber farming and that any other acts alleged which would establish possession were not present.
Further, we are of opinion that averments that property was used for recreational or farming purposes are sufficient to establish possession for adverse possession purposes. See Mullis, 118 S.E.2d at 65 (acts of adverse possession “are only required to be exercised in such way and in such manner as is consistent with the use to which the lands may be put and the situation of the property____”). Again, to avoid summary judgment the Tribe was required to controvert facts alleged in the claimants’ affidavits.
In sum we find that those averments made in the affidavits are sufficient to satisfy the open, notorious, continuous, and hostile requirements.[6] The only questions remaining are whether the affidavits sufficiently established that they were based on personal knowledge and whether they established that the ten-year period was met.
III.

No Personal Knowledge by Affiants

The Tribe argues that some of the affidavits are not based on personal knowledge and, as a consequence, are insufficient as a basis for summary judgment. Federal *1342 Rule of Civil Procedure 56(e) provides as follows:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters therein.
To comply with Rule 56(e), there must be a showing that the statements made in the affidavits were made on personal knowledge. “The absence of an affirmative showing of personal knowledge of specific facts vitiates the sufficiency of the affidavits and, accordingly, summary disposition based thereon [is] improper.” Antonio v. Barnes, 464 F.2d 584, 585 (4th Cir.1972).
The Tribe asserts that some of the affidavits are insufficient because there has been no showing that the statements contained in them are based on personal knowledge. Some of these statements were made by individuals concerning use of the property by family members. We are of opinion that, in ordinary circumstances, and nothing else appearing, an individual can be presumed to have personal knowledge of the possession of land by a family member. Absent a specific showing by the Tribe that an individual did not have personal knowledge of the use of a tract of land by a family member, the statements concerning familial use of the property comply with Rule 56(e)’s personal knowledge requirement.
Therefore, we reject the Tribe’s argument that the affidavits were not based on personal knowledge as to those statements concerning use of property by family members of the affiant.
The Tribe also attacks certain affidavits made by corporate officers on behalf of the corporation. We are of opinion that, ordinarily, officers would have personal knowledge of the acts of their corporations. Therefore, since the Tribe did not set forth facts, by affidavit or otherwise, that would show that the officers did not have personal knowledge, the personal knowledge requirement is satisfied as to those affidavits.
Two of the affidavits attacked as insufficient for lack of personal knowledge were made by one Alton G. Brown. In his first affidavit, dated May 22, 1989, Brown does not allege that his statements were made based on personal knowledge. However, this is remedied in his supplemental affidavit wherein he states, “During the entire period from 1962 to 1979, I was familiar with use and possession of the Spencer property referred to in my affidavit of May 22, 1989.” Therefore, the combined affidavits were sufficient.
As to those affidavits set forth at Appendix C, we are of opinion that, while they do set forth sufficient facts to sustain a motion for summary judgment, on their face, they do not establish that the affiant’s statements were based on personal knowledge. Therefore, we remand as to the claims based on those affidavits solely for the district court to determine whether the statements were made on the basis of personal knowledge.
While certain affidavits did not establish that they were based on personal knowledge, summary judgment was properly granted as to the property described therein as supplemental affidavits were filed that remedied the problem.
IV.

Tacking

The general rule in South Carolina, contrary to the rule in most jurisdictions, is that “even though there be privity by deed or devise between successive adverse occupants of land, the possession of such occupants cannot be tacked to make out title by adverse possession under the statute of limitations.” D. Means, Survey of South Carolina Law: Property, 10 S.C.L.Q. 90 (1957). Tacking has been allowed in South Carolina in cases of intestate succession, but not when the disseisor conveys by deed. See Epperson v. Stansill, 64 S.C. 485, 42 S.E. 426 (1902). In the following passage, the Supreme Court of South Carolina explained its reasoning:
If possession of land is transmitted by the act of disseisor before the statutory *1343 bar is complete, the grantee of the dissei-sor cannot unite his possession with that of the disseisor in order to show adverse possession for the requisite period. But when the heir is in of his ancestor’s possession, and makes no new entry, the possession of ancestor and heir may be united in making out the statutory period; the distinction being that, when possession is cast by operation of law from ancestor to heir in possession, there is no break in the continuity of possession, whereas, in the case of disseisor and grantee, there is a new entry and a break in the continuity of possession.
Epperson, 42 S.E. at 427 (citations omitted). Therefore, following that Court’s reasoning, we are of opinion that South Carolina courts would allow tacking when a change in possession occurs by operation of law. It follows that when a transfer in possession occurs other than by operation of law, South Carolina courts would not allow tacking.
The district court in granting summary judgment allowed tacking in a number of situations. The Tribe argues that the court erroneously created new exceptions to South Carolina’s no-tacking rule and, in other instances, erroneously applied the no-tacking rule.[7] We take each instance in turn.
IV.A.

Corporate Merger

The district court allowed tacking in instances when a corporate merger occurred. There appears to be no South Carolina authority on this precise point. The Tribe relies on the following language from Epperson, 42 S.E. at 427, to support its argument that tacking should not be allowed in the merger context: “If possession of land is transmitted by the act of disseisor before the statutory bar is complete, the grantee of the disseisor cannot unite his possession with that of the disseisor in order to show adverse possession for the requisite period.” The Tribe asserts that merger documents are similar to a deed and, therefore, break the period of possession, because they involve a voluntary act.
We are of opinion, however, that the same rationale used by the courts in allowing tacking between an ancestor and heir, that “when possession is cast by operation *1344 of law from ancestor to heir in possession, there is no break in the continuity of possession,” Epperson, 42 S.E. at 427, would allow tacking in the context of a corporate merger. While it is true that merger is a voluntary act, the change in possession of the property occurs by operation of law. See S.C.Code § 33-11-106 (“When a merger takes effect ... the title to all real estate and other property owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment____”); S.C.1962 Code § 12-20.6 (superseded) (“All property, real, personal and mixed ... and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed.”); Official Comment to S.C.Code § 33-11-106 (“A merger is not a conveyance or transfer, and does not give rise to claims of reverter or impairment of title based on a prohibited conveyance or transfer.”). Therefore, the district court did not err in allowing tacking in the context of a corporate merger.
IV.B.

Transfers from Parent to Subsidiary

On May 1, 1969, Duke Power Company deeded the perimeter lands surrounding the Lake Wylie hydroelectric project to its wholly-owned subsidiary corporation, Crescent Land and Timber Company. The district court granted Duke Power and Crescent’s motion for summary judgment based on a ten year period of possession between July 2, 1964 and July 2, 1974. The court stated that Crescent was “a mere alter ego or instrumentality of Duke” Power and the deed did not interrupt continuous possession by Duke Power for adverse possession purposes. We are of opinion that this holding must be reconsidered in light of this opinion.[8]
The ten year period was met only if the deed from Duke Power to Crescent had no effect on the running of the statute. The Tribe argues that the running of the statute was interrupted by the 1969 transfer.
In South Carolina, “[t]he mere ownership of the capital stock of one corporation by another does not create an identity of corporate interest between the two companies, or render the holding company the owner of the property of the other, or create the relationship of principal and agent, or representative, or alter ego between the two.” Gordon v. Hollywood-Beaufort Package Corp., 213 S.C. 438, 49 S.E.2d 718, 720 (1948) (emphasis added).
Also in South Carolina, however, in an appropriate case and in furtherance of the ends of justice the corporate veil may be pierced. DeWitt Truck Brokers v. W. Ray Flemming Fruit Company, 540 F.2d 681 (4th Cir.1976). Dewitt, incidentally, is a recent comprehensive exposition of South Carolina law with respect to the facets of alter ego which it discusses. Add to that the principle relied upon by the Tribe, that a piercing of the corporate veil generally will not be permitted for the benefit of the parent corporation or its stockholders, 18 AmJur 2d, Corporations, § 46, which is in accord with 1 Fletcher Cyclopedia, Corporations (1990), p. 615, that a sole shareholder may not choose to ignore the corporate entity when it is convenient. With these principles in mind, it appears that Duke had acquired the perimeter property surrounding Lake Wylie some years prior to 1969 and prior to 1965. In 1965, the Federal Power Commission entered its Order 313 requiring power companies to provide recreational opportunities on properties surrounding their reservoirs. In 1969, Duke conveyed the perimeter lands surrounding Lake Wylie to its subsidiary, Crescent. Standing alone, this might seem to be a conveyance which would prevent tacking on the part of Duke. So far as its title to the perimeter land is concerned, an affidavit of an officer of Crescent, however, states facts which tend to show that Crescent may be the alter ego of Duke. On the other hand, the conveyance of the perimeter lands to Crescent may *1345 tend to show that Duke treated Crescent as a separate corporate entity and not as its alter ego, if, as the Tribe claims,, the purpose of the conveyance was to avoid setting up recreational facilities as required by FPC Order 313. The district court found that Duke had not violated Order 313. It gave no reasons, but the affidavit of Crescent’s attorney may tend to support that conclusion. Whether or not FPC Order 313 was violated, however, is not the end of the question. If the conveyance from Duke to Crescent enabled Duke to avoid compliance with Order 313, even though such avoidance may have been quite legitimate, that would be evidence which tends to show that Duke treated Crescent as a separate corporation and not as its alter ego. The district court also did not consider whether or not the rule we have cited from Fletcher, that a sole shareholder may not choose to ignore the corporate entity when it is convenient, has been violated.
In view of the facts we have stated and the authorities, we are of opinion that the district court erred in granting summary judgment to Duke and Crescent with respect to the perimeter property. Its judgment in that respect is vacated and the case remanded for such further fact finding as may be appropriate.[9]
IV.C.

Transfer between Subsidiary Corporations of Same Parent Corporation

The same rules apply in this situation as apply to a transfer between a parent and subsidiary. If the transfer is found as a matter of fact and law to be to an alter ego, the tacking requirement will be complied with, otherwise it will not. The holding of the district court that the ten year period ran as to property claimed by Bowater, Inc., because the transfer between its subsidiaries East Highlands Company and Catawba Timber Company had the effect of stopping the running of the statute prior to the running of the ten-year period must be vacated and that transfer re-examined under the principles stated above in this opinion.
IV.D.

Devise to Heirs

The district court held that “[a] devise to an heir of a testator does not interrupt possession.” This ruling may be valid in some instances, but invalid in others, as the doctrine of worthier title may apply.
Under the doctrine of worthier title, a devise to the heirs of the testator was a nullity if the interest limited in their favor was identical to that which such heirs would have taken by descent if there had been no devise to them. The rule originated because the feudal incidents of relief, wardship, and marriage were preserved only if the new tenant of land acquired an interest by descent from the former tenant. See Restatement (Second) of Property § 30.2, Comment on Subsection (2). Because the reason for the rule, the preservation of feudal incidents, no longer exists, the doctrine as it applies to testamentary dispositions has been abolished by statute in several States, but not in South Carolina. See Restatement (Second) of Property § 30.2, Statutory Note.
South Carolina applied the doctrine of worthier title in the case of Seabrook v. Seabrook, 10 S.C.Eq. 495 (1859). The rule was there stated as follows, p. 503-504:
“It is undoubted law, that where a testator gives by his will the same estate to the same persons who would be entitled to take that estate by operation of law in case of an intestacy, the devise or legacy will be void, and the right of the party or parties entitled will be referred to the law of distributions and descents. If *1346 there be any variation between the disposition which the will, and which the law makes in such a case, either in regard to the persons who are to take, or to the quantity of the estate, the title will be referred to the will."
The court held that the devise to the heirs was void and as to the heir in question the testator died intestate.
Without attempting to go into all of the South Carolina cases touching the subject, we come to the case of Burnett v. Crawford, 50 S.C. 161, 27 S.E. 645 (1897) which is relied upon by the Tribe. That was a case in which an heir had sued the children of another heir for partition. The plaintiff heir had taken her estate by intestacy and the defendant children of the other heir had taken their interest by devise. The testator had entered into a purported settlement of rights in the property with the plaintiff heir some 9 years prior to the testator’s death. During that 9 year period, the court considered, at least for the purposes of its opinion, that the testator held adversely to the plaintiff heir. Although the plaintiff brought suit 11 years after the settlement, the court refused to permit tacking of the 9 year period and the two year period although the devise was to the defendants. The Court stated at 27 S.E. p. 647:
“A devisee under a will does not take possession of the devise as heir, but rather as the grantee or purchaser of the testator.”
It is that language the Tribe relies upon. But we note that almost immediately following that language, and indeed in the same paragraph, the following statement at p. 647-648:
“Under a properly framed request, appellant would have been entitled to have the jury instructed as to the right of a devi-see claiming under a will to unite his possession with that of his testator so as to make out the statutory period of adverse possession.”
While the first statement just quoted may seem to have abolished the doctrine of worthier title (as it applies to possession) by implication, the second statement just as surely provides the doctrine to have survived. We are of opinion that both statements may be reconciled by referring back to page 504 of Seabrook, which states that if there be any variation between the disposition made by the will and the law, either in regard to the persons who are to take or the quantity of the estate, the title will be referred to the will. While it is true that the testator in Burnett did devise the land in question to his children, the defendants, the terms of the will are not stated and we must suppose, in order to justify the correctness of the opinion and make it consistent with the other South Carolina cases, that the will involved, while it may have devised the land to the same heirs, did not give to them the same quantity of estate they would have received by virtue of intestacy or that the record does not show the quantity of estate. We are reassured in our view of Burnett by the subsequent case of Kilgore v. Kirkland, 69 S.C. 78, 48 S.E. 44 (1904). In Kilgore, the testator had received the property in question, apparently by deed, some 4 or 5 years before his death in 1850, at which time he devised the same to his children, share and share alike. The heirs continued in the testator’s possession until the year 1858. On these facts, the South Carolina Court stated:
“... while it is also true to that possession of a devisee cannot be united with that of the testator, to make out adverse possession for the statutory period (Burnett v. Crawford, 50 S.C. 161, 27 S.E. 645), nevertheless, when the heir is in of his ancestor’s possession and makes no new entry, the possession of ancestor and heir may be united in making out the period necessary to quiet title.”
48 S.E. at 46.
Thus our construction of Burnett follows Kilgore’s construction of Burnett, and we think the doctrine of worthier title is extant in South Carolina. We note that Professor Means agrees with our conclusion that tacking should be permitted under the doctrine of worthier title in such cases, although he arrives at his construction of Burnett by his view that the problem was not properly presented to the *1347 South Carolina Court. Survey of South Carolina Law, 10 S.C.L.Q. 90, n. 4 (1957). We are further of opinion that Seabrook should not be held by us to have been overruled by implication. Overruling by implication is not favored. See Rodriquez de Quijas v. Shearson/American Express, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989); United States v. Bryan, 339 U.S. 323, 343 at 345-346, 70 S.Ct. 724, 736 at 737-738, 94 L.Ed. 884 (1950) (Justice Jackson concurring). And in diversity cases also that is the rule in this circuit. See Walk v. Baltimore & Ohio Railroad, 847 F.2d 1100, 1108 (4th Cir. 1988)
Thus, this aspect of the case must be remanded with instructions to apply the doctrine of worthier title if the claimant heir took as devisee and with the same quantity of estate he would have taken if an heir. If all those requirements are met tacking should be permitted in such cases.
IV.E.

Change in the Identity of a Trustee

The Tribe argues that the district court erred in holding that a change in the identity of a trustee does not interrupt the running of the ten-year statute. We are of opinion the district court correctly held that the appointment of a successor trustee upon the death of the former trustee does not interrupt the running of the statute of limitations. It is a fundamental rule of trust law that a trust will not fail for want of a trustee. Leaphart v. Harmon, 186 S.C. 362, 195 S.E. 628, 629 (1938). Therefore, we hold that, by operation of law, possession is cast from the former trustee to his successor.
IV.F.

Change in Beneficiary of Trust

The Tribe argues that the transfer of a beneficial interest in a trust interrupts the ten-year period. We find no merit to this contention. The property is held adversely by the trust through the trustee. A change in the beneficial ownership has no effect on the running of the statute as there is no new entry onto the property.
V.
William O. Nisbet Property (602.5 and 53 acre tracts)
The Tribe also asserts that a question of fact exists as to the exclusivity and continuity of the possession of William O. Nisbet. Its claim is based on the fact that members of the Catawba Tribe have at times entered the 602.5 and 53 acre tracts owned by Nisbet for the purpose of collecting clay. Mesdames Wade and Campbell submitted affidavits stating that they were never denied access to the property to dig in the clay holes. Nisbet does not dispute that this activity has taken place. However, Nisbet’s affidavit shows that he allowed members of the Tribe on to Nisbet’s property for access to the clay. He claimed the property as his own and nothing done by the Tribe members amounted to an ouster of Nisbet’s possession. Therefore, Nisbet’s possession was exclusive and continuous. We agree with the district court’s holding that “[ajdverse possession is not interrupted by entry of the owner unless there is also ouster of the claimant.” “Actual possession, once taken, will continue, though the party taking such possession should not continue to rest with his foot upon the soil, until he be disseised, or until he do some act which amounts to a voluntary abandonment of the possession.” Smith v. Southern Railway, 237 S.C. 597, 118 S.E.2d 440, 442 (1961).
It is true that the affidavits of Mesdames Wade and Campbell state that members of the Tribe had gone on the property for years, and the Wade affidavit states that such members of the Tribe did not ask permission or notify the Nisbets of their entry. We leave aside for the moment the fact that the Wade affidavit probably shows on its face it is not on personal knowledge as respects other members of the Tribe, but we do not leave aside the fact that it does not show that Nisbet had any knowledge of such entry. Even if the Wade affidavit is construed most favorably to the Tribe, it does not show any ouster of *1348 Nisbet under Smith, especially because it does not show that Nisbet knew of any unauthorized entry onto his property.
The Tribe’s point is without merit.
VI.

Adverse Possession & Co-Tenancies

The Tribe takes issue with the district court’s ruling that “[t]he adverse possession of one co-tenant establishes the adverse possession of his co-tenants.” We find no error.
In South Carolina, it is presumed that “the possession of one tenant in common is the possession of all.” See Woods v. Bivens, 292 S.C. 76, 354 S.E.2d 909, 911 (1987). The operation of the rule that the possession of one co-tenant is the possession of all only ceases if “such possession becomes adverse to the co-owners of the possessor.” 354 S.E.2d at 911. Therefore, a co-tenant who satisfies the adverse possession requirements does so for all of the co-tenants so long as he does not claim to be holding adversely to his co-tenants. In Terwilliger v. Marion, 222 S.C. 185, 72 S.E.2d 165, 167 (1952), the Supreme Court of South Carolina recognized that a co-tenant can establish adverse possession for both herself and her co-tenant. That being so, we are of opinion that a change in identity of co-tenants has no effect on establishing adverse possession so long as one co-tenant possesses the property for the requisite period. Therefore, we find no merit to the Tribe’s contention that the transfer of title as to one co-tenant interrupted the running of the adverse possession statute.[10]
VII.

Effect of Non-Residency of Claimants

The district court ruled that “[t]he non-residence of a defendant claiming adverse possession does not toll the statutory period.” The Tribe argues that the ten year adverse possession period was tolled against certain defendants because they may have been outside of South Carolina for more than one year. S.C.Code § 15-3-30 provides that if a defendant is out of state for more than one year when or after a cause of action accrues, the statute of limitations is tolled until his return to the state. See Dandy v. American Laundry Machinery Inc., 301 S.C. 24, 389 S.E.2d 866, 868 (1990).
We are of opinion that this tolling statute is not applicable to adverse possession claims. “[T]he purpose of the tolling statute is to remedy the problem of locating a nonresident defendant before expiration of the statute of limitations.” 389 S.E.2d at 868. Recently, the Supreme Court of South Carolina has indicated that the tolling statute is inapplicable when the statute’s purpose is not fulfilled. See Dandy, 389 S.E.2d at 868 (§ 15-3-30 does not apply to a foreign corporation with a registered agent in South Carolina because there is no problem in locating the nonresident defendant before expiration of the statute of limitations). In so doing, the court appears to have rejected the reasoning used in two prior cases that relied on the plain language of the statute. See Cutino v. Ramsey, 285 S.C. 74, 328 S.E.2d 72 (1985) (tolling statute applies to an out-of-state defendant even when service can be effected by substitute service on the Chief Highway Commissioner); Harris v. Dunlap, 285 S.C. 226, 328 S.E.2d 908 (1985) (amenability to personal service under the long-arm statute does not render the tolling statute inapplicable). The Dandy case makes clear that the current test in South Carolina for determining the applicability *1349 of the tolling statute is whether the problem of locating an out-of-state defendant prior to the running of the statute of limitations is present. In the instant case, South Carolina’s separate comprehensive statutory scheme for the recovery of real property obviates the need for a tolling statute against out-of-state defendants in adverse possession cases. See S.C.Code, Title 15 Civil Remedies and Procedures, Chapter 67 — Recovery of Real Property. Specifically, S.C.Code § 15-67-30 authorizes summons and service by publication on parties outside of the State in actions “to determine adverse claims.” Therefore, the problem that the tolling statute addresses, the difficulty in locating an out-of-state defendant before expiration of the statute of limitations, is not present as there is no need to locate the out-of-state defendant in an adverse possession case. In sum, we follow South Carolina’s rule, as stated in Dandy, that the tolling statute is inapplicable in cases in which the problem that the statute was meant to address is not present and hold the tolling statute for out of state defendants to be inapplicable to adverse possession claims.
VIII.

Dismissal of Certain Claimants

The Tribe alleges that the district court erroneously dismissed certain parties from the case. The district court dismissed twenty-nine claimants, holding that answers to interrogatories on file established that those claimants were entitled to have all parcels claimed by them dismissed from the action. The Tribe argues that, in fact, no answers to interrogatories were filed with the district court. The claimants argue that the information contained in the interrogatory answers was presented to the district court in summary form in briefs, memoranda, and appendices and the Tribe did not object to the use of this information in this form. We are of opinion the district court did not err in relying on these summaries in its dismissal orders as the Tribe did not dispute their accuracy.
We are of opinion, however, that as to those parties that moved for summary judgment as to certain parcels that were not released by the summary judgment orders, the district court erred in dismissing them from the action. Those parties are listed in Appendix H.[11]
Based on the foregoing, the judgment of the district court is
AFFIRMED IN PART, REVERSED IN PART, AND VACATED AND REMANDED IN PART.
APPENDICES A THROUGH H
Without necessarily implying any criticism of the attorneys for the Tribe or for the defendants, a glance at the style of this case and a reference to our various opinions herein shows the more than complicated position in which the parties and the court find ourselves. Many of the defendants own multiple tracts of land' and the decision of the district court appealed from is contained in large part in four judgment orders accompanied by multiple exhibits.
Perhaps because the Tribe was confined, at least in part, by rules as to numbers of pages, the content of its brief on appeal generally stated its complaints in the most general terms as to parties and tracts affected, while the brief itself may have specifically stated the nature of the legal error claimed.
The reply brief, of the defendants in many cases picked up and argued the specific legal issues presented leaving their general application as to parties and parcels of land to an interpretation of the district court’s orders and the briefs. While we think with reasonable certainty that the attorneys quite understand the parties and the property affected by the briefs, only a causal inspection will reveal *1350 that in most cases such is not shown by a reading of the briefs without minute references to the appendix and in some cases to parts of the record not included in the appendix.
For example, on page 41 of the Tribe’s brief, in part B, 2, c. “Tree Farms” the objection is “A number of claims identified the nature and use of the property claimed by them as tree farm, timber farming, timber growing or timber lands.” The brief then lists 18 appendix references without giving names of defendants or properties affected. To this, the defendants respond on page 21 of their brief by identifying the. property of only two defendants with particularity. Much the same can be said of the Tribe’s contentions on page 43, part d. with reference to “Fanning or Recreational or Social Purpose.” While the defendants response on page 28 is in more detail than the response mentioned for tree farming, nevertheless, it does not identify all of the property as to which the Tribe’s claim is made. We could go on and on, some better and some worse, but these two examples are enough to show why the mechanical construction of our opinion, for the most part, speaks in general terms, and shows its application in most cases by way of appendices. That was the only practical means we could devisé within any kind of reasonable page limitation to show what we had decided and how our decision applied to a particular defendant or piece of property. We must all remember that this opinion concerns the title to real estate and well may end up being recorded in the real estate records of the State.
. We should say without rancor that the briefs we have had in this case do no.t commend themselves as models of. form. We have, however, addressed each question of law raised by the Tribe.
For these reasons, we have included as a part of this opinion and the decision in this case appendices A through H, which will show the .parties affected, precisely where to find the properties affected, and the parts of our decision affecting the same, including our disposition of the questions.

. The historical facts surrounding the Catawbas' claim to the property in question are set forth at length in this court’s first opinion and the Supreme Court’s opinion on the matter. See South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986); Catawba Indian Tribe v. South Carolina, 718 F.2d 1291 (4th Cir.1983), adopted en banc, 740 F.2d 305 (4th Cir.1984), rev’d, 476 U.S. 498, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986).

. Section 15-3-340, at the time this action was brought, provided as follows:
No action for the recovery of real property or for the recovery of the possession thereof shall be maintained unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question within ten years before the commencement of such action.
A second action for the recovery of real property shall be brought within two years from the rendition of the verdict or judgment in the first action or from the granting of a nonsuit or discontinuance therein.

. Section 15-67-210 provides as follows:
In every action for the recovery of real property or the possession thereof the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law. The occupation of such premises by any other person shall be deemed to have been under and in subordination to the legal title unless it appear that such premises have been held and possessed adversely to such legal title for ten years before the commencement of such action.

. The complaint actually was filed on October 28, 1980. Therefore, the defendants had until October 28, rather than October 20, to fulfill the ten year requirement.

. The Tribe makes numerous attacks against the affidavits, but in nearly every instance it has not shown a need for a trial. We reject the Tribe’s argument that certain affidavits were insufficient because they did not attach certified copies of all the documents referred to in the affidavits. The documents referred to are, in most, if not all, cases, available as public records concerning property. The Tribe has not disputed the veracity of the statements concern *1341 ing the use of the property and thus have not shown the need for a trial. Also the Tribe does not contest the content of the documents referred to or even state it does not know their content. Thus, it has shown no prejudice for any non-compliance with the rule.

. The Tribe claims that a number of the affidavits contain admissions that the property described was “neither occupied, possessed nor used.” We have inspected each of those affidavits and find the Tribe’s argument to be without merit. When the pertinent section of each affidavit is read it is apparent that the affiant has alleged sufficient acts to establish entry upon and possession of the property.

. The district court erred in granting summary judgment as to two parcels claimed by a Close family trust. The chain of title of these tracts contained transfers of record within the ten-year statutory period. One of the parcels was transferred from Southern Appliances to the trustees on May 7, 1971 (nine years after the statute began running against the tribe in 1962 and nine years prior to the filing of the suit in 1980) by deed dated May 7, 1971 and recorded May 12, 1971 in deed book 418 at page 382. The other parcel was deeded to the trustees by deed dated March 18, 1974 and recorded March 21, 1974 in deed book 481 at page 65. The grantor thereon had been conveyed the property by deed dated May 2, 1971 and recorded May 12, 1971 in deed book 418 at page 382. Again, the dates of these transfers make it impossible for one party to have held the property for the requisite ten year period. Barring the applicability of an exception to the no-tacking rule (no exception is offered by the claimant), the ten-year requirement was not met.
The Tribe claims that the record title of another parcel, deeded to the trustees by deed dated September 20, 1972 and recorded September 16, 1972 in deed book 448 at page 38, shows that no party held the property for the requisite ten-year period. The claimants allege that Ann S. Close, who is not a party to the litigation, is the record owner of this parcel and, therefore, that parcel was not subject to the summary judgment motion. It appears, however, that summary judgment was granted as to that parcel. See Third Judgment Order, Exhibit Y (Parcel with Curt Seifart as grantor recorded in deed book 448 at page 38). Since summary judgment was not sought for that parcel, it could not have been appropriately granted. Therefore, the district court erred in granting summary judgment as to that parcel.
The Tribe also alleges that the district court granted summary judgment as to other parcels (Tax Map Numbers 710 0000 003, 732 0000 003, 730 0000 009, 731 0000 002, 710 0000 004) for which summary judgment was not sought and as to which there was no evidence in the record. These parcels are listed in an appendix to a memorandum in support of summary judgment dated July 11, 1990. Summary judgment was granted as to those parcels in the Third Judgment Order filed July 18, 1990. It appears that the Tribe is correct that no affidavits were filed to support a motion for summary judgment as to those parcels. Therefore, with no evidence before it, the district court erred in granting summary judgment as to those parcels.

. We are of opinion that Duke is not estopped from asserting that Crescent is its alter ego. The Tribe did not rely on any corporate separateness.

. The Tribe asserts that the district court erroneously held the six-year statute of limitations on actions for inverse condemnation applicable to Duke and Crescent’s claim to the Lake Wylie Perimeter Property. We do not agree that the district court so ruled. In its amendment to the second judgment order the district court plainly held that the six-year statute applied to the Lake Wylie Dam Property and the Lake Wylie Basin Property. The order made no mention that the statute would apply to the Lake Wylie Perimeter Property and we do not read it as so holding.

. As an additional argument, the Tribe claims that a transfer by deed from a disseisor’s executors to a devisee interrupts the running of the adverse possession statute and therefore certain percentage interests in property claimed by the Nisbet family were not held for the requisite period. Also the Tribe argues that the creation or termination of a trust interrupts the 10 year period. We do not reach these issues as our holding that one co-tenant can establish adverse possession for all co-tenants allows the Nisbets and other claimants to establish adverse possession as to their entire holding by establishing that one co-tenant held the property for the requisite period. For example, it appears that the Nisbet trust held an undivided interest for the entire requisite 10 year period.

. The Tribe argues that John S. Simpson moved for summary judgment as to certain parcels that were not released by the judgment orders. A review of the record indicates that summary judgment was, in fact, granted as to all parcels claimed by John S. Simpson. The Tribe’s confusion stems from an apparent typographical error — Tax Map Number 600-11-02-005 became Tax Map Number 600-11-02-035 in the judgment order.